Tallulah MORGAN et al., Plaintiffs,

v.

John J. KERRIGAN et al.,
Defendants.

Civ. A. No. 72-911-G.

United States District Court,
D. Massachusetts.

Jan. 28, 1975.

J. Harold Flannery, Robert Pressman, Eric Van Loon, Center for Law and Ed., Cambridge, Mass., Roger I. Abrams, Case Western Reserve University, Cleveland, Ohio, John D. Leubsdorf, Foley, Hoag & Eliot, Boston, Mass., for plaintiffs.

James J. Sullivan, Jr., DiMento & Sullivan, Boston, Mass., for School Committee.

Richard W. Coleman, Segal, Roitman & Coleman, Boston, Mass., for School Administration.

Sandra Lynch, Boston, Mass., for State Bd. of Ed.

Thayer Fremont-Smith, Choate, Hall, & Stewart, Boston, Mass., for Boston Home & School Association.

Kevin Moloney, Boston, Mass., for City of Boston Law Dept.

John F. McMahon, Boston, Mass., for Boston Teachers Union.

## MEMORANDUM AND ORDERS ON FACULTY RECRUITING AND HIRING

GARRITY, District Judge.

In its opinion filed June 21, 1974 in this case, the court found intentional segregation of the Boston public schools by the Boston School Committee and Superintendent of Schools (hereinafter the "city defendants"). One aspect of that segregation was the racial composition and distribution of faculty members in the school system. The court found the low percentage of black teachers to be a result of unconstitutionally discriminatory use of a cut-off score on the National Teacher Examination, inadequate minority recruitment efforts, and the reputation of Boston as an anti-black, segregated school system.

The parties have submitted numerous filings, including proposed findings of fact, as to the proper scope of a long-term remedy that will eliminate the effects of past discrimination and accomplish desegregation in the areas of faculty hiring and recruitment. Several hearings have been devoted to this subject. Much of the discussion and dispute among the parties has concerned the use of a hiring ratio, a percentage goal for hiring of black teachers and the choice of the appropriate percentage goal. Many of the findings proposed by the parties are directed to this point.

Blacks comprised about 16.32% of Boston's population in 1970, which was an increase from 9.05% in 1960. A reasonable projection from these census figures is that Boston's population now is about 19% black. Black children, how- ever, made up about 35% of the students attending public schools in the school year 1973–74.

In the 1973–74 school year, there were 373 black teachers of a total of 5214, or 7.1%. On July 31, 1974 the court entered an order which was implemented before the opening of school in September 1974. This order required the hiring of one black teacher for each white teacher hired, to the extent that qualified black candidates were available. Implementation of this order has resulted in an increase in the percentage of black teachers in the system to 10.4%.

■ The propriety of using a population percentage as a goal is legally established in both school cases and other cases where remedies were fashioned for discrimination. Swann v. Charlotte-Mecklenburg Board of Education, 1970, 402 U.S. 1, 25, 91 S.Ct. 1267, 28 L.Ed.2d 554; United States v. Texas Education Agency, 5 Cir. 1972, 467 F.2d 848, 873; Boston Chapter, N. A. A. C. P., Inc. v. Beecher, 1 Cir. 1974, 504 F.2d 1017.

■ The court has adopted 20%, approximately the black population of Boston, as an appropriate percentage goal for the hiring of black teaching faculty. This goal is below the black student population percentage, 35% in Boston schools, urged by plaintiffs and adopted in some other school cases, e. g., United States v. Texas Education Agency, supra; Keyes v. School District No. 1, 380 F.Supp. 673, D.Colo.1974, pp. 14–15 of final judgment and decree. The percentage of a minority group in the city's population is the goal adopted in numerous other discrimination cases, e. g., Boston Chapter N. A. A. C. P., Inc. v. Beecher, supra; Carter v. Gallagher, 8 Cir. 1971, 452 F.2d 315 (and cases cited therein).

City defendants argue that a percentage goal based on Boston's black population is too high. They suggest that the appropriate goal is at most the percentage of black college graduates in Boston or in the Northeast, which they argue represents the available pool of teachers for Boston teaching positions. Those

percentages are about 5.25% and 4.24%, respectively,[1] and are below the present percentage of black faculty in Boston's schools. In our opinion such a goal would not be remedial or equitable.

■ We note first that the findings in the court's opinion of June 21, 1974 revealed that in the year 1972–73 5.4% of the permanent teachers in the Boston school system were black, a percentage above that proposed by defendants as an appropriate goal.[2] The court found, and the Court of Appeals affirmed, that acts of intentional racial discrimination in recruiting and hiring teachers had occurred. The conclusion is inescapable that without such discrimination there would have been more than a 5.25% or a 4.24% black teaching staff in Boston. Secondly, city defendants' proposed goal would do nothing to eliminate the effects of the acts of past discrimination found by the court. The court also found that the small number of black teachers in Boston schools, a result of discriminatory practices, was one hallmark of a dual segregated school system. As such, it contributed to the denial of the plaintiff class' rights to equal educational opportunity. To achieve the mandate of the Supreme Court in Green v. County School Board, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716, to eliminate racial discrimination "root and branch", the presence of black teachers in numbers more closely proportionate to the number of black students in the schools is an important step.

■ The use of hiring ratios and their limited preferential treatment of black applicants in remedying past discrimination has been recognized as a permissible method of fulfilling the court's duty to "render a decree which will so far as possible eliminate the discriminatory effects of the past . . . ", Louisiana v. United States, 1965, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709. Boston Chapter N. A. A. C. P., Inc. v. Beecher, supra; Associated General Contractors, Inc. v. Altshuler, 1 Cir. 1973, 490 F.2d 9; Castro v. Beecher, 1 Cir. 1972, 459 F.2d 725; Carter v. Gallagher, supra.

Therefore black and white teachers should be hired on a one-for-one basis until the percentage of black faculty in the schools reaches 20%. This hiring goal does not require the employment of any teacher who does not meet the requirements imposed in the past for teaching in Boston's schools.[3] Further, the goal will provide for a gradual increase in the number of black teachers over several years.[4] In each year, once no more qualified black candidates are available to fill teaching vacancies on a one-for-one basis, all remaining vacancies will be filled with qualified teachers of other races.

■ Provision is first made for an affirmative minority recruitment program, to continue until there is a 25% black faculty. The reason any upper limit is adopted is to provide for the eventual termination of the court's supervision in this area, not because such efforts would not be desirable if continued indefinitely so that the most highly qualified could be selected from a large number of black applicants. These efforts should not terminate with the enforcement of a hiring ratio but should extend to eliminate potential black teachers' views that Boston will hire black teachers only under compulsion.

1. The small percentage of blacks among college graduates may itself be the result of discriminatory practices not at issue in this case.

2. In that year there were also 143 black provisional teachers out of 710, or 7.5% black teachers of both permanent and provisional status.

3. A description of past hiring standards appears at pp. 91–96 of the court's June 21, 1974 opinion, 379 F.Supp. 410, 456–59.

4. Hiring under the court's July 31, 1974 order resulted in a net gain of 185 black teachers when 819 teachers were hired. It would require a further net increase of 242 black teachers to constitute even a 15% black faculty.

## RECRUITING

The city defendants are ordered to undertake the following steps for the recruitment of additional black applicants for teaching positions in the Boston public schools until 25 percent of the teachers in the Boston public schools are black:

1. *Methods.* The city defendants shall visit colleges with significant numbers of black students who may be eligible for employment as teachers and shall recruit such students to apply for positions in the Boston public schools. During the course of such recruiting visits, the city defendants shall explain to the potential black applicants the opportunities for teaching in the Boston public schools and the application procedure for applying for such positions. Interviews conducted by recruiters shall satisfy any requirement for a personal interview, and applicants so interviewed shall not be required to come to Boston for any other interview. Particular emphasis shall be placed on those positions in which there are presently few black teachers. The recruiting efforts shall generally include the following activities at the following indicated times:

a. *October—December.* During this period the city defendants shall distribute literature to colleges where potential black applicants are being educated and shall request an opportunity from those colleges to visit the colleges and recruit students. Recruiting trips shall be scheduled during this period.

b. *January—March.* The city defendants shall process the results of their recruiting efforts, and make a preliminary determination of the number of potential black applicants. Based on that determination, the city defendants shall during this time arrange for the scheduling of recruiting trips during the spring.

c. *April—June.* As the areas of particular need within the Boston school system becomes definite, the city defendants shall visit additional campuses and recruit additional black applicants. So long as a black teacher shortage continues to exist as set forth in the section of this order on teacher hiring, the recruiters visiting the campuses shall be authorized to hire on the spot applicants who meet qualifications, subject to a review and disallowance of the hiring within ten days for stated reasons by the Board of Examiners or by the Boston School Committee.

2. *Recruiting Staff.* The city defendants shall appoint a full-time Coordinator of Minority Recruitment who shall be black. He shall have the responsibility for implementing this order and for generally increasing the city defendants' effectiveness in securing black teachers available for permanent or provisional employment. The city defendants shall also appoint two full-time assistants to the Coordinator. They shall assist the Coordinator in increasing the school system's effectiveness in securing black (and, in the discretion of the city defendants, other minority) teachers available for permanent or provisional employment. They shall assist new black teachers in settling in Boston. The city defendants shall provide a sufficient budget to cover salaries, the employment of necessary clerical staff, recruiting trips, advertising and printing, and other expenses of recruitment. For the academic year 1975–76, this budget shall be not less than $120,000.

The Coordinator and his two full-time assistants shall be assisted from time to time by teams of teachers excused on a temporary basis from their regular duties to assist on recruiting. The city defendants shall train those teachers to prepare them for recruiting.

Black individuals shall be encouraged to apply for the present vacancy on the Board of Examiners.

3. *Federal Assistance.* The city defendants, as part of their general search for federal money to assist desegregation, shall explore all possibilities for applying for federal financial assistance

in the recruiting or training of additional minority teachers.

4. *Reports.* The city defendants shall file with the court and with all parties semiannual reports in January and in July of each year, until 25 percent of the teachers in the Boston public schools are black. These reports shall contain a description of the activities undertaken by the city defendants in recruiting additional black applicants for teaching positions.

### HIRING

The city defendants are ordered to undertake the following steps for the hiring of additional faculty in the Boston public schools:

5. *Identification of Racial Composition of Staff.* At each grade level (i. e., K–5, 6–8, 9–12) the city defendants shall determine the racial composition of the full-time professional instructional staff. If that racial composition is less than 20%, a shortage of black teachers shall be deemed to exist.

6. *Hiring of Additional Faculty.* In hiring additional faculty, if a shortage of black teachers exists at a grade level, the city defendants shall hire one black permanent teacher for every white permanent teacher hired at that grade level. In hiring or rehiring provisional teachers, if a shortage of black teachers exists at a grade level, the city defendants shall hire or rehire one black provisional teacher for every white provisional teacher hired or rehired at that grade level; this order, however, shall not prevent the city defendants from rehiring for any year any provisional teacher they employed the year before. The hiring or rehiring of teachers of other minorities shall not count as the hiring or rehiring of a white or a black teacher.

7. *Qualifications.* For purposes of this order, the city defendants shall not be required to hire any teacher who cannot qualify for Massachusetts certification [5] for the position for which the teacher is to be hired, except that, if this is necessary to comply with the second sentence of paragraph 6 of this order, up to 20% of the black provisional teachers hired in any year shall be college graduates who cannot so qualify; no provisional teacher hired under this exception need be rehired after his or her third year if he or she has not by July 15 of that year obtained certification. The city defendants shall not be required to hire or rehire any teacher who was previously employed in the Boston public schools and who received an unsatisfactory rating.

8. *Unfilled Vacancies.* If the city defendants have complied with the section of this order on recruitment, and if vacancies continue to exist for particular positions on July 15 of any year, then the city defendants may fill all such remaining positions with teachers without regard for the race of those teachers.

9. *Reports.* The city defendants on or before March 15 of each year shall file with the court and with all parties a ranking system by which they propose to rank black applicants for teaching positions, together with a report on the numbers of black and white permanent and provisional teachers then employed at each level. Any objections and counterproposals from any party shall be filed on or before April 1 of each year.

The city defendants beginning on April 15 of each year and on the 15th day of each successive month through October 15 shall file with the court and with all parties a report detailing:

a. the projected number of teaching vacancies in various categories

b. the projected numbers of permanent and provisional teachers to be hired

---

5. The course and performance prerequisites listed in the Circular of Information on the Examination and Certification of Teachers for 1974–75 may also be required for the following specialties: mechanical drawing; science advisor elementary; economics (high); bookkeeping (high); shorthand and typewriting; office practice; teacher of aphasic children; teacher of music (vocal); instrumental instructor.

c.  a summary of applications and interview activity of black applicants

d.  the number and race of permanent and provisional teachers hired or rehired.