Patricia McREDMOND et al., by their attorney and next friend, Charles Schinitsky, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Malcolm WILSON, Individually and as Governor of the State of New York, et al., Defendants-Appellees.

No. 314, Docket 75–7389.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1975.

Decided Feb. 2, 1976.

Gene B. Mechanic, Brooklyn, N. Y. (Charles Schinitsky, Michael J. Dale, The Legal Aid Society, Brooklyn, N. Y., of counsel), for plaintiffs-appellants.

Margery Evans Reifler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.

Before MANSFIELD, OAKES and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal concerns the interplay of the doctrines of abstention and exhaustion of state remedies in the context of a 42 U.S.C. § 1983 civil rights action in which a variety of constitutional and statutory issues are raised. The Southern District of New York, Lee P. Gagliardi, *Judge,* decided that abstention from exercise of jurisdiction was warranted. We disagree, concluding that the case does not present the narrowly limited circumstances permitting invocation of the doctrine which was established by the Supreme Court in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[1] However, we affirm the court's *sub silentio* refusal to convene a three-judge court for consideration of several of the adjoined constitutional questions.

Plaintiffs-appellants are children who have been adjudicated as Persons in Need of Supervision (PINS) by the New York State Family Court. This group encompasses males younger than 16 and females younger than 18 who, while guilty of no criminal offense, are found to be truant from school or who are incorrigible, ungovernable, habitually disobedient, or beyond the control of their lawful guardian. N.Y. Fam.Ct. Act § 712(b). Appellants do not challenge *per se* the legitimacy of the Family Court's adjudication of them as PINS. However, seeking relief under the Civil Rights Act, 42 U.S.C. § 1983, and its jurisdictional counterpart, 28 U.S.C. § 1343, they raise several constitutional challenges to the state's policy, after adjudicating persons as PINS and committing them to state authorities, that has resulted in placing approximately 450 of them, including some of the named plaintiffs, in four rural training schools located so far from their home and communities that visits by family members and friends are rendered difficult and costly. As acknowledged at oral argument, the core of their contention is that these schools do not comply with the developing requirements of a constitutionally guaranteed "right to treatment" for those involuntarily confined in state institutions or facilities. See, e. g., *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). The schools, it is alleged, are inadequately manned and do not provide the educational, recreational, medical and psychiatric services essential to training, care and rehabilitation. In addition, plaintiffs present a variety of constitutional claims, including violation of the Eighth Amendment's prohibition of cruel and unusual punishment, and denial of equal protection, of freedom of association, and of the right to travel. They seek both declaratory and injunctive relief forbidding state officials from detaining PINS in constitutionally inadequate facilities.

The United States District Court, Southern District of New York, considered a variety of motions relating to the litigation, including plaintiffs' request for class-action certification and for preliminary injunctive relief, and defendants' motion to dismiss the complaint pursuant to Rule 12(b), F.R. Civ.P. While noting that the "allegations contained in the complaint [are] . . .

---

1. With due respect for our esteemed colleague's dissent we, unlike Judge Van Graafeiland's doting grandfather, neither gain satisfaction nor escape responsibility by adherence to our constitutional heritage, which obligates us to vindicate federal rights. We simply comply with clear cut Supreme Court rulings prohibiting us from refusing to enforce those rights merely because the grievance "involves duties created by State statute." Indeed most civil rights cases in which federal intervention has been mandated grow out of the statutes of one or more of our 50 states. Once forced to exercise jurisdiction, the federal judge has frequently found himself burdened with the seemingly endless task of administering the penal, educational or similar activities under review in order to secure recognition of constitutional rights. See, e. g., *Rhem v. Malcolm,* 371 F.Supp. 594 (S.D.N.Y.), 377 F.Supp. 995 (S.D. N.Y.), *aff'd,* 507 F.2d 333 (2d Cir. 1974), *on remand,* 389 F.Supp. 964 (S.D.N.Y.), *aff'd,* 527 F.2d 1041, Dkt. No. 75–2098 (2d Cir. Dec. 5, 1975) (conditions in N.Y.C. detention centers); *Morgan v. Hennigan,* 379 F.Supp. 410 (D.Mass.), *aff'd sub nom., Morgan v. Kerrigan,* 509 F.2d 580 (1st Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975), *devising remedy,* 388 F.Supp. 581 (D.Mass.), *aff'd,* 530 F.2d 431 (1st Cir. 1975) (busing and integration in Boston school system).

of a sufficiently serious nature as to warrant reasonably prompt consideration by an appropriate court," Judge Gagliardi ruled that the federal court properly should abstain from consideration of the case. Citing two recent New York Court of Appeals cases, *In re Lavette*, 35 N.Y.2d 136, 359 N.Y.S.2d 20, 316 N.E.2d 314 (1974), and *In re Ellery C.*, 32 N.Y.2d 588, 347 N.Y.S.2d 51, 300 N.E.2d 424 (1973), the district court found that the state courts are in the process of defining a right to treatment, yet unclear, that might be construed to obviate the need for federal constitutional determination. Moreover, the court abstained across-the-board from considering the plaintiffs' constitutional claims, thereby implicitly denying their request for the convening of a three-judge statutory court to hear various constitutional contentions. See *Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

## DISCUSSION

*Abstention*

██  It is a pillar of federal jurisdiction that one having a bona fide claim is normally entitled as a matter of right to have the claim adjudicated by a federal tribunal and that this right may not be defeated by relegating the matter to the state court or by requiring the plaintiff to exhaust state remedies. *McNeese v. Board of Education for Com. Unit School District 187*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The federal courts have the duty "to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . .", *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). This duty was summarized years ago by the late Judge Alfred P. Murrah in a statement that has been repeatedly quoted with approval by the Supreme Court:

> "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."

*Stapleton v. Mitchell*, 60 F.Supp. 51, 55 (D.Kan.1945), quoted by Supreme Court in *Zwickler v. Koota, supra*, 389 U.S. at 248, 88 S.Ct. 391, and *McNeese v. Board of Education, supra*, 373 U.S. at 674 n. 6, 83 S.Ct. 1433. This jurisdictional precept has been repeatedly recognized as carrying special force in civil rights actions under § 1983 since Congress, in adopting that statute and its jurisdictional counterpart, 28 U.S.C. § 1343, "imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims," *Zwickler v. Koota, supra*, 389 U.S. at 248, 88 S.Ct. at 395; *McNeese v. Board of Education, supra*, 373 U.S. at 673–74, 83 S.Ct. 1433.

> "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1960).

The judge-made doctrine of abstention represents a narrow exception to the foregoing principle, which was forged by the Supreme Court in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There the Court held that in special circumstances, where resolution of a federal constitutional issue is controlled by the interpretation of an unclear or complex state statute that is susceptible to a construction which would avoid or modify the necessity of a constitutional adjudication, the federal court should defer to the state court's interpretation of its own statute. See, in accord, *Kusper v. Pontikes*, 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973); *Lake Carriers' Assn. v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257

(1972); *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); *Zwickler v. Koota, supra,* 389 U.S. at 248, 88 S.Ct. 391. In such rare cases the avoidance of federal-state friction, the recognition that regardless of a federal court's construction, the state's highest court is the final expositor of that state's law, and the possibility that the federal question may be avoided, outweigh the duplication of effort and added expense and delay heaped upon the plaintiff by shuttling him between state and federal courts. See *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 418, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The federal court's hand is merely stayed temporarily, however, and, if the state court's interpretation of the state statute should fail to avoid the federal constitutional question, the plaintiff is then entitled to have the latter adjudicated by federal court, to which he may return as the forum selected by him in the first place. *England v. Louisiana State Board of Medical Examiners, supra.*

■ In general, the three essential conditions for invocation of the doctrine of abstention are that the state statute be unclear or the issue of state law be uncertain, *Harman v. Forssenius, supra,* 380 U.S. at 534, 85 S.Ct. 1177, that resolution of the federal issue depend upon the interpretation to be given to the state law, *Wright v. McMann,* 387 F.2d 519, 525 (2d Cir. 1967), and that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue. In such circumstances abstention will be upheld. As we recently recognized in *Reid v. Board of Education of City of New York,* 453 F.2d 238 (2d Cir. 1971), although these conditions precedent do appear to be strict on their face, they offer some room for play in the joints. The extent of permissible flexibility, however, can be discovered only by a comparison of the questions of state statutory interpretation which previously have been held to mandate or to preclude abstention. Typical of cases where abstention has been mandated is the Supreme Court's deci-

sion in *Lake Carriers' Assn. v. MacMullan, supra,* where the plaintiffs' federal suit attacked Michigan's Watercraft Pollution Control Act of 1970 as violative of the Supremacy Clause (because it conflicted with the federal Water Quality Improvement Act) as well as of the Due Process and Equal Protection Clauses. The court upheld abstention on the ground that the Michigan statute contained ambiguities which were susceptible of an interpretation that would meet in part or in whole the requirements of federal law. Similarly in *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), the Court held that abstention was required to permit Alaska's courts to resolve an apparent conflict between the provisions of state statutes governing the issuance of salmon net gear licenses and the terms of the state's constitution which reserved certain waters "to the people for common use" and which had "never been interpreted by an Alaska court," 397 U.S. at 86, 90 S.Ct. at 790. And in *Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), which involved an attack on a Florida public education financing statute (known as the "Millage Rollback Law") on the ground that it violated the Equal Protection Clause by distributing the taxing authority solely according to a county's wealth, the Court held that abstention was mandated to enable the state courts, in litigation already pending, to resolve conflicts between the state statute and provisions of the state's Constitution, since the Millage Rollback Law

"was only one aspect of a comprehensive legislative program for reorganizing educational financing throughout the State to more nearly equalize educational opportunities for all the school children of the State. . . . the manner in which the program operates may be critical in the decision of the equal protection claim . . . ." 401 U.S. at 479, 91 S.Ct. at 858.

■ On the other hand where a state statute is unambiguous the court must perform its adjudicative duty and has no right to abstain merely because a state court

decision might render a federal adjudication unnecessary. For instance, in *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), a Wisconsin statute requiring retail liquor outlets to post the names of excessive drinkers was held to be sufficiently unambiguous so as not to require the plaintiff, an aggrieved person, to repair to the state courts for the purpose of obtaining a construction of the law or relief from it. Similarly in a federal court attack upon state school segregation as violative of the federal Constitution, the availability of an administrative remedy under the Illinois School Code was held not to require abstention, since there was "no underlying issue of state law controlling this litigation . . nor is the federal right in any way entangled in a skein of state law that must be untangled before the federal case can proceed," *McNeese v. Board of Education, supra,* 373 U.S. at 674, 83 S.Ct. at 1437.

■ Applying these principles here, it is readily apparent that this case does not qualify as an appropriate vehicle for abstention. The primary issue raised in the district court is whether plaintiffs are entitled under the United States Constitution to a minimum level of treatment and, if so, whether that treatment is being denied by the State of New York. Resolution of that issue does not turn upon construction of any unclear state statute or statutory scheme controlling the extent of treatment to be accorded PINS, the interpretation of which might avoid or modify the federal constitutional issue. The relevant state statute is § 255 of the Family Court Act, which assures PINS of such "care, protection and assistance as will best enhance their welfare." This statute has twice been construed by the New York Court of Appeals as entitling PINS as a matter of "due process" to adequate treatment. See *Lavette M. v. Corporation Counsel of the City of New York,* 35 N.Y.2d 136, 359 N.Y.S.2d 20, 316 N.E.2d 314 (1974); *Matter of Ellery C. v. Redlich,* 32 N.Y.2d 588, 347 N.Y.S.2d 51, 300 N.E.2d 424 (1973). Application of the key statutory clause does not require intricate or penetrating statutory interpretation best left to the state. On the contrary, the

right to treatment, as New York's highest court has indicated in its interpretation of the statute, is subject to basic constitutional due process principles, of which the state courts are not the final expositors. Indeed, as the New York Court of Appeals recognized, the question is one of fact rather than of statutory interpretation. The court must, on the record before it in a particular case, determine whether PINS are being provided with an adequate program of supervision and treatment that will furnish certain essential components, including counseling, therapy, education and diagnosis, as distinguished from "mere custodial care." If not, "a serious question of due process is raised." *In re Lavette, supra,* 35 N.Y.2d at 142, 359 N.Y.S.2d at 24, 316 N.E.2d at 317. We have no reason to believe that the federal court is any less equipped to engage in this factual inquiry than is its counterpart at the state level. Indeed, § 1983 challenges to the constitutionality of institutional treatment of inmates, including juveniles and mental patients, are now routinely heard by federal courts, see *O'Connor v. Donaldson, supra; Nelson v. Heyne,* 491 F.2d 352 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Morales v. Turman,* 383 F.Supp. 53 (E.D.Tex.1974); *Martarella v. Kelley,* 349 F.Supp. 575 (S.D.N.Y.1972); *Inmates of Boys' Training School v. Affleck,* 346 F.Supp. 1354 (D.R.I.1972); *Lollis v. Department of Social Services,* 322 F.Supp. 473 (S.D.N.Y.1970), even though, as here, similar challenges might have been asserted in state forums by relying upon state due process provisions or statutes promising in general terms "care," "treatment," and the like.

Appellees, however, emphasize that the state courts might construe the state-developed right to treatment so broadly as to obviate the necessity for resort to the federal forum. Therefore, they argue relying heavily upon our decision in *Reid v. Board of Education,* 453 F.2d 238 (2d Cir. 1971), the federal court should await a state decision. But this reliance upon *Reid* is misplaced. In *Reid,* plaintiffs on federal due

process and equal protection grounds challenged the failure of school officials to screen handicapped children and to provide them with special education classes. The state Constitution and Education Law contained detailed provisions [2] strongly suggesting on their face that the Board of Education might be "in default of its statutory obligations." *Id.* at 240. Moreover the state courts already had pending two cases presenting the issue. *Id.* at 243 n. 9. In such circumstances, this court chose to defer to the state proceedings for clarification of the state law, pointing out that

"we are not aware of any state court decision defining the obligations of the Board under section 4404 or Article XI of the New York constitution so that a federal court would be aided in disposing of the state claims under pendent jurisdiction. This is precisely the situation Justice Frankfurter warned against in *Pullman*: a 'tentative decision' by the district court on the State law claims which might be replaced by an authoritative state adjudication. 312 U.S. at 500, 61 S.Ct. 643." [Footnote omitted] *Reid v. Board of Education*, 453 F.2d at 243.

Thus the resolution in pending state litigation of the uncertainty in the state law, which could control the federal constitutional claim, might well have avoided entirely the necessity of resolving the latter. In contrast, the issue of whether the treatment accorded to PINS is sufficient to meet due process requirements must be resolved in the present case, whether via the state or federal route. Further, in contrast to *Reid*, to abstain in this case would oblige plaintiffs to initiate a fresh proceeding in the state courts pursuant to a cursory state statutory mandate that does not require a clarifying interpretation but in effect necessitates a full-blown trial on the factual question of whether PINS are receiving treatment. In the interim, of course, plaintiffs' grievances under federal law would remain in limbo.

*Reid* also differs from this case in another important respect. The *Reid* court twice noted that the state law claims are wholly "separate and distinct" from the federal constitutional claims, *id.* at 244, and consequently plaintiffs remained in a position to separate and preserve their federal claims for federal court review. See *England v. Medical Examiners, supra.* In contrast, it is clear in this case that the incipient right to treatment under state law is as a practical matter coterminous with the federal right. It is notable for example, that in demonstrating doctrinal support for its announced right to treatment, the New York Court of Appeals relied upon the two pathbreaking federal cases in this area and explicitly pointed to the Due Process Clause as the underlying constitutional provision. See *In re Lavette, supra,* 35 N.Y.2d at 142–43, 359 N.Y.S.2d at 24, 316 N.E.2d 314 citing *Rouse v. Cameron,* 125 U.S.App.D.C. 366, 373 F.2d 451 (1966), and *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala.1971). While this suggests that the state courts might be willing to recognize the same treatment rights as plaintiffs claim under the federal Constitution, it is now settled that when state and federal laws overlap in this fashion, plaintiffs are not precluded from choosing the federal forum. See *Askew v. Hargrave, supra,* 401 U.S. at 478, 91 S.Ct. 856; *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507 (1971); *Reid, supra,* 453 F.2d at 244 (distinguishing *Constantineau*).

2. Article XI, Section 1 of the New York Constitution.reads: "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." The statutory provision in question was even more explicit: "The board of education of each city . . . [is] to furnish suitable education facilities for handicapped children by means of home-teaching, transportation to school or by special classes. . . . Where there are ten or more handicapped children who can be grouped homogeneously in the same classroom for instructional purposes such board shall establish such special classes as may be necessary to provide instruction adapted to the mental attainments and physical conditions of such children." N.Y.Educ.Law, § 4404, subd. 2. See 453 F.2d at 240. It is obvious that the fleeting reference to "such care, protection and assistance as will best enhance their welfare" found in Fam.Court Act § 255 in the present case is not comparable to the substantial, specific state law involved in *Reid*.

██ Appellees strongly argue that the right to treatment under state law is not necessarily congruent with that under federal law since the state courts might well decide to expand protection beyond the minimum requirements of the federal Constitution. But, of course, this same conjecture is possible in any case where dual remedies are available. For example, in *Constantineau,* the Wisconsin courts might have construed their state due process guarantee as broadly or more broadly than the federal Fourteenth Amendment, see 400 U.S. at 400 & n. 1, 91 S.Ct. 507 (Burger, *C. J.,* dissenting); *id.* at 444–45, 91 S.Ct. 507. (Black, *J.,* dissenting), but this possibility did not justify abstention. As the Supreme Court has since noted, "the mere possibility" that a state court might take the initiative in striking down its own laws "is no ground for abstention." *Procunier v. Martinez,* 416 U.S. 396, 400–01, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). In the present case there is every indication that the state right to treatment is a mere counterpart of the federal due process clause as explicated in case law relied upon by the state's highest court. In such a case the "assertion of a federal claim in a federal court [need not] await an attempt to vindicate the same claim in a state court." *Askew v. Hargrave, supra,* 401 U.S. at 478, 91 S.Ct. at 858. *McNeese v. Board of Education, supra,* 373 U.S. at 672, 83 S.Ct. 1433.

██ Finally, appellees urge that the balance tips in favor of abstention since federal court consideration would entail a severe intrusion into a sensitive area of state law. While its PINS institutions doubtless form an important aspect of the state's social policy, we do not find this argument compelling. In a society marked by increasing complexity, certainly the mere fact that a federal constitutional challenge is leveled against state institutional arrangements does not establish that the controversy is an unduly sensitive one beyond legitimate fed-eral concern. See, e. g., *Procunier v. Martinez, supra,* 416 U.S. at 400–01, 94 S.Ct. 507 (Court does not abstain in case challenging practices in state penal institutions); *McNeese v. Board of Education, supra,* 373 U.S. at 674, 83 S.Ct. 1433 (schools).

We conclude, then, that the district court improperly abstained from consideration of plaintiffs' constitutional contentions and remand accordingly.

### Three-Judge Court

██ On January 8, 1975, plaintiffs amended their complaint to request the convening of a three-judge court to hear legal challenges to the placement of PINS in training schools as violative of the Eighth Amendment, the Equal Protection Clause, and rights of association and travel.[3] Judge Gagliardi did not expressly rule on this request but abstained on all counts. Since a single district judge is not empowered to abstain on matters properly before a three-judge panel, *Idlewild Liquor Corp. v. Epstein, supra; Steffel v. Thompson,* 415 U.S. 452, 457 n. 7, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Abele v. Markle,* 452 F.2d 1121, 1126 (2d Cir. 1971), the court's action must be taken to represent a *sub silentio* ruling that three judges need not convene to consider the constitutional claims in question. We agree. Based upon the record before us we conclude that plaintiffs' relevant constitutional arguments are insubstantial and hence do not confer jurisdiction on a three-judge statutory tribunal. See *Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

██ Plaintiffs' reliance on the Eighth Amendment in questioning the constitutionality of their placement is unpersuasive. They do not challenge the legitimacy of their adjudication as PINS or the state's authority to confine them in appropriate facilities. Rather they simply argue that their placement in a rural locale away from

---

**3.** Plaintiffs acknowledge that their challenge to placement in training schools grounded on the right to treatment does not necessitate three-judge review since, rather than seeking the invalidation of the state PINS statute, they hope to preserve PINS placement while superimposing a requirement that adequate treatment be afforded once the child is placed in confinement.

their families and friends represents cruel and unusual punishment. We disagree. Such placement does not raise the spectre of barbarous or inhumane punishment of the type held to be proscribed by the Eighth Amendment, such as that encountered in *Morales v. Turman, supra,* 383 F.Supp. at 122 ("Boys are frequently brutally punished . . . . [S]ome inmates practice extortion, assault, rape . . . with little interference from personnel"), and *Inmates of Boys' Training School v. Affleck, supra,* 346 F.Supp. at 1365–66 ("The conditions . . . are insidiously destructive of the humanity of these boys. . . . To then subject a boy to confinement in a dark and stripped confinement cell with inadequate warmth and no human contact can only lead to his destruction."). To the extent that the plaintiffs can demonstrate that rural placement inhibits the PINS' legitimate right to treatment, the district court is not precluded from giving consideration to such evidence. However, the argument that placement in a rural setting 100 miles from home violates the Eighth Amendment is so obviously without merit that it cannot convert appellants' attack on the state PINS statute or on its application into one necessitating three-judge consideration under 28 U.S.C. § 2281. See *Sostre v. McGinnis,* 442 F.2d 178, 191–94 (2d Cir. 1971), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972).

■ Nor does appellants' claim that, because neglected or abused children are not placed in training schools, the placement of PINS in such schools violates the Equal Protection Clause rise to the level of constitutional substantiality. A rational basis for distinguishing between PINS and neglected children is readily apparent. The PINS child, while guilty of no criminal offense, nonetheless has been found beyond a reasonable doubt to have engaged in a pattern of misbehavior. See N.Y. Family Court Act § 712(b); *Matter of David W.,* 28 N.Y.2d 589, 319 N.Y.S.2d 845, 268 N.E.2d 642 (1971). Thus to some extent he is a culpable actor. In contrast, "[t]he neglected child is sinned against rather than sinning.

. . . Neglected children are victims, PINS are (non-criminal) offenders, or at least socially maladjusted." *Martarella v. Kelley, supra,* 349 F.Supp. at 595. Regardless of the deeper psychological or sociological validity of this distinction, it is a rational one and the state therefore is not proscribed from choosing to classify as it has done. Cf. *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973); *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

■ Equally unsubstantial is plaintiffs' effort to employ the rights of association and travel in challenging their confinement in rural communities. Some restriction of the freedom to associate with whomever one wishes or to move around at will is, of course, the very essence of placement in an institution, see *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), and, as noted earlier, plaintiffs do not *per se* contest the appropriateness of special placement for PINS. Instead, the focus of their attack returns to the distant, rural character of the training schools. While state officials certainly may not without justification totally seal off inmates or detainees from those with whom they seek to have contact, *Pell v. Procunier, supra,* 417 U.S. at 824, 94 S.Ct. 2800. *Procunier v. Martinez, supra,* 416 U.S. at 412–13, 94 S.Ct. 1800. *Rhem v. Malcolm,* 527 F.2d 1041 (2d Cir. 1975); we do not read these constitutional guarantees as granting plaintiffs a license to select the geographic locale in which the state should build its treatment facilities. Plaintiffs on remand will not be powerless to raise their criticisms of rural placement insofar as it affects the issue of their treatment. But the bare statement that they are limited in travel or in association with their home communities does not rise to the status of a substantial constitutional violation requiring the convening of a three-judge court.

Reversed in part, affirmed in part and remanded.

VAN GRAAFEILAND, Circuit Judge (dissenting):

A Federal judge rearranging a State's penal or educational system is like a man feeding candy to his grandchild. He derives a great deal of personal satisfaction from it and has no responsibility for the results. "Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' [Citations omitted]." *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 607, 46 L.Ed.2d 561, 44 U.S.L.W. 4095, 4100 (Jan. 21, 1976). I see no pressing need for Federal interference in this case, which involves duties created by State statute; and I would affirm on the opinion below.