Louise SNYDER, on behalf of herself and all others similarly situated, Plaintiff,

v.

Bruce A. ALTMAN, Individually and in his official capacity as Public Guardian of Los Angeles County, and Lance Brisson, Individually and in his official capacity as Assistant Public Guardian of Los Angeles County, Defendants.

No. CV 77–4520–F.

United States District Court, C. D. California.

Feb. 8, 1978.

to receive care and treatment in the setting which is least restrictive of their civil liberties, and (2) that certain practices of the public guardian violate state statutory provisions regarding the duties of guardians and conservators and violate the constitutional rights of the plaintiffs. She also seeks to enjoin the practice of placing conservatees or wards in other than the least restrictive treatment centers necessary, and seeks damages for violation of her civil rights. The defendants have moved for abstention.

The general rule is that there is no need to exhaust possible state remedies before pursuing a civil rights action in federal court. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1960). Therefore, the fact that the plaintiffs may have a state forum available to them or that there are state procedures which they could use to pursue their claims does not mean that this court cannot or should not decide this case.

The doctrine of abstention, however, may apply to prevent a federal court from exercising jurisdiction, even though exhaustion of state remedies is not strictly necessary. *See McRedmond v. Wilson,* 533 F.2d 757 (2d Cir. 1976) for an analysis of the interplay between the exhaustion of remedies doctrine and the abstention doctrine, and a description of abstention as an exception to the general rule that no exhaustion of state remedies is necessary in a § 1983 case.[1] The courts have recognized several different theories of abstention (*Santiago v. Philadelphia,* 435 F.Supp. 136 (E.D.Penn. 1977)), at least two of which overlap in this case. These are the theories based on the cases of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Rail-*

Neal S. Dudovitz, Gill Deford, National Senior Citizens Law Center, Los Angeles, Cal., for plaintiff.

John H. Larson, County Counsel, Leslie C. Randall, Deputy County Counsel, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

The named plaintiff in this action seeks a declaratory judgment (1) that she and the class she represents, conservatees and wards of the public guardian, are entitled

---

1. The court in *McRedmond* decided against abstention, but the case is distinguishable as discussed below.

*road Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In *Younger* the Supreme Court held that a federal court could not intervene in a pending state criminal proceeding. Cases since *Younger* have extended this principle to preclude federal courts from interfering with state court jurisdiction in a civil proceeding in which the state has important interests at stake akin to those involved in a criminal prosecution. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (civil nuisance abatement); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (action by state agency seeking restitution of welfare payments).

The relief requested in this case would interfere substantially with the continuing jurisdiction of the state courts over probate conservatorships. The California courts have recognized that a conservatorship is under the continuing jurisdiction of the court which appoints the conservator. *Guardianship of Kemp,* 43 Cal.App.3d 758, 118 Cal.Rptr. 64 (1974); *Browne v. Superior Court,* 16 Cal.2d 593, 107 P.2d 1 (1940). In the *Browne* case, the plaintiff was an elderly lady who had been placed in a nursing home in Northern California by her guardian, who had been appointed by the Santa Barbara Superior Court. She petitioned for a writ of habeas corpus, and a Northern California court granted the petition. The California Supreme Court held that habeas corpus relief was improper because the petitioner admitted that she was not challenging the fact of her custody under the guardianship, but rather the conditions of that custody, which she alleged were unduly restrictive of her liberty. (This is very similar to the claim made in the present case.) Regarding any inquiry as to the conditions of the custody, the Santa Barbara court was held to have exclusive jurisdiction:

> "In carrying out his duties of administration (the guardian) acts under the authority and supervision of the court which appointed him, must render accountings, may petition for instructions, and is subject to liability or removal for misconduct. The jurisdiction of the court in this respect is a continuing one, and though no motion, petition or other incidental proceeding may be pending at any particular time, the court still has jurisdiction over the guardianship. No other court, we believe, has power to interfere with that continuing control over the guardian; no other court could receive and approve his accounting, or instruct him as to his duties. The San Francisco superior court cannot, in this habeas corpus proceeding, enter into any consideration of the propriety of the medical or other care of Mrs. Browne, her residence, the extent of supervision over her visitors, mail or other personal activities, or any other matters connected with her guardianship." 16 Cal.2d at 598, 107 P.2d at 3.

This language from *Browne* illustrates both the important state interest in pending guardianship proceedings and the fact of continuing jurisdiction for *Younger* purposes. If different courts in the same state are precluded from interfering in the guardianship proceedings, the argument against federal intervention is even more compelling. Furthermore, a new state statute makes the appointing court's claim of continuing jurisdiction over guardianship even stronger, because it is now required that the probate court conduct a periodic review of the guardianship or conservatorship to evaluate its continuing necessity and to review the conditions imposed. Probate Code §§ 1500.1 and 1851.1 (effective 7–1–77).

■ Therefore, the principles of federalism and comity expressed in *Younger* and recently extended by the Supreme Court demand abstention in this case. The assertion of jurisdiction by this court to determine the rights of a conservatee vis-a-vis her probate court appointed conservator, when that state court has unlimited control over the conservator, would constitute the type of friction which *Younger* directs should be avoided.

The theory of abstention established in *Railroad Commission v. Pullman, supra,* also applies here. As set out by the Ninth Circuit, the tests for *Pullman* abstention are:

"1. The complaint 'touches a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open.'

2. 'Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.'

3. The possible determinative issue of state law is doubtful."

*Rancho Palos Verdes v. Laguna Beach,* 547 F.2d 1092, 1094 (9th Cir. 1976).

The first requirement is met in this case for a number of reasons. The court in *Rancho Palos Verdes,* a land-use restriction case, relied on the intricate and extensive regulation of land-use in California as indicating that the area was one of importance to the state. A similarly detailed statutory framework governs guardianship and conservatorship procedures in California. Extensive revisions in that law were made just last year, indicating that this is an area of current interest in the state. Furthermore, the special nature of the California courts' continuing jurisdiction makes this a particularly sensitive area.

The second requirement for abstention, that an issue of state law may be determinative of the controversy, is also met. The plaintiffs claim that the conduct of the public guardian in making placements which are unnecessarily restrictive of liberty violates various statutory provisions of the California Probate and Welfare and Institutions Codes which govern guardianships and conservatorships. For instance, Probate Code § 1500 gives a guardian the right to "fix the residence" of a ward. An interpretation of that power which required the residence to be the least restrictive under the circumstances would completely resolve the controversy without the need for any adjudication of the constitutional issues.

Finally, there are numerous indications that the state law regarding the powers and duties of guardians and conservators is doubtful, particularly in the area in which those powers and duties may possibly conflict with fundamental rights of the wards or conservatees. The power of the guardian to fix the residence of the ward has not been construed by the California courts in the context of a challenge based on the ward's rights to liberty. There was dicta in the *Browne* case to the effect that undue restraints on liberty by a guardian would be actionable, perhaps under habeas corpus, and that they would be beyond the scope of the guardian's power. 16 Cal.3d at 600, 107 P.2d 1.

Two opinions of the Attorney General of California dealing with this power of a guardian have indicated that there are restrictions on the right of a guardian to order a ward to be treated at facilities which impose unnecessary restraints without the ward's consent. 58 Atty.Gen.Opin. 50 (1975) (Only a conservator appointed under the Lanterman-Petris-Short Act procedures can place ward in a locked facility); 34 Atty.Gen.Opin. 313 (1959) (Ward may not be placed in institution for treatment of mental illness on basis of consent by guardian. This ruling has effectively been codified in the new law, Probate Code § 1500.) A very recent Attorney General's opinion indicates that, although the new law made basically procedural rather than substantive changes in the law relating to conservatorships and guardianships, some changes in the language regarding the circumstances under which a guardian or conservator may be appointed have caused confusion regarding the scope of power of guardians and conservators. Atty.Gen.Opin. No. CV 76–248 (December 9, 1977) (Power of guardian to make necessary medical decisions for ward unclear under new law.) These decisions of the Attorney General indicate not only that the state law in this area is doubtful, but also that the California judicial system is concerned about and sympathetic to the kind of claim made by the plaintiffs in this case. Therefore, abstention on the grounds of *Pullman* is also proper.

*McRedmond v. Wilson, supra,* relied on by the plaintiffs, is distinguishable. That case involved a challenge to the state practice of placing juveniles who had been adjudicated as incorrigibles (but not as criminals) in facilities which did not provide adequate treatment and which were located at long distances from their homes. In that case the statutory authority under which the placement was made was very general, as opposed to the detailed and extensive statutory structure involved in this case. Furthermore, there was no issue of continuing jurisdiction of any state court, so the principles of *Younger* abstention were not considered. Finally, the court in *McRedmond* indicated that New York state law had effectively prescribed a duty of treatment for such juveniles very similar to that required under the constitution, so that the only issues remaining to be determined in such a case were factual. It was thought that the federal court could decide those issues as easily as the state courts, and with a minimum of intrusion on the state's interest in defining its own laws. In the present case, however, the extent of the duty of a guardian regarding the rights of a ward to nonrestrictive treatment settings has not been considered or decided by the California courts. The state courts should therefore be given the first opportunity to define this duty so as to avoid any federal constitutional problems. There is no reason to believe that the state courts will not undertake that task with due regard for the fundamental constitutional rights involved.

This court reserves jurisdiction to consider any federal claims which may remain after state adjudication of the issues in accordance with the rule expressed in *Newport Investments v. City of Laguna Beach,* 564 F.2d 893 (9th Cir. 1977).

IT IS FURTHER ORDERED that the clerk forthwith serve copies of this memorandum opinion by United States mail upon counsel for the parties appearing in this action.