AMERICA'S BEST FAMILY SHOW-PLACE CORP., Plaintiff,

v.

The CITY OF NEW YORK, DEPT. OF BUILDINGS, Irwin Fruchtman, Commissioner, and Dept. of Consumer Affairs, Bruce C. Ratner, Commissioner, Defendants.

No. 81 Civ. 4087.

United States District Court, E. D. New York.

Jan. 19, 1982.

Shea & Gould, New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action challenging the constitutionality of the City of New York's zoning and licensing laws regulating coin operated video game machines. Plaintiff seeks declaratory and injunctive relief, pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 65.

Plaintiff seeks to open a restaurant in a "C–2"[1] commercial zone in Queens. The restaurant has a Certificate of Occupancy for Use Group 6 which permits it to operate an eating and drinking establishment with incidental musical entertainment. In lieu of musical entertainment, however, plaintiff wants to install forty dining tables containing coin operated video game machines on which its customers can entertain themselves by shooting down space invaders and asteroids while dining on hamburgers and soft drinks.

Under New York City licensing regulations, an establishment containing five or more video games is denominated an amusement arcade for which an arcade license is required.[2] Operating without a license would subject plaintiff to civil and criminal penalties.[3]

Amusement arcades may be licensed, either as a matter of right or by permission. Licenses as of right are restricted to Coney Island, the Rockaways and a few remote manufacturing zones. Although Section 773–4.0(b) of the City's Administrative Code grants the Commissioner of Consumer Affairs authority to issue licenses for amusement arcades in other zones, including the one in which plaintiff's restaurant is located, there are no specific criteria governing eligibility. Indeed it appears that no license applications are even accepted unless the business is located within one of the "as of right" zones and has the applicable Certificate of Occupancy. The New York City Department of Buildings, moreover, has added another barrier: it will not issue a Certificate of Occupancy for establishments with more than four video games in Use Group 6 establishments, such as plaintiff's.

Plaintiff brings this action because the City's regulatory scheme effectively precludes it from obtaining a license to operate its restaurant in accord with its plan. In fact, the Queens Borough Superintendent has written in bold letters across a letter from plaintiff's architect describing its plan: "No more than 4 devices permitted." Moreover, the City has already instituted a civil suit against over sixty amusement arcades operating without licenses and has brought many criminal actions. Rather than risk criminal and civil penalties, plaintiff seeks a declaration that the City's

1. Zoning Regulations, Appendix A-Index of Uses, issued November 1, 1979. This is the classic commercial zone.

2. Section B32–40.0, New York City Administrative Code.

3. See e.g., N.Y.C. Administrative Code, Chapter 32, Title A, Sections 773–5.0[b], 773–5.0[c], Chapter 26, Title A, Sections 643a–11.0, 643a–12.0.

scheme violates plaintiff's First and Fourteenth amendment rights and its civil rights under 42 U.S.C. § 1983. Plaintiff also demands an injunction to enable it to open its restaurant without fear of civil liability or criminal prosecution.

The defendant moves to dismiss the complaint on the grounds that (1) there is no case or controversy, and (2) under the abstention doctrine this Court should decline jurisdiction. The motion is denied.

### 1. *Case or Controversy*

■ Defendant's argument that there is no case or controversy is without merit. Plaintiff is "not obliged to take the risk of prosecution, fines and imprisonment and loss of property in order to secure an adjudication of [its] rights." *Terrace v. Thompson*, 263 U.S. 197, 216, 44 S.Ct. 15, 18, 68 L.Ed. 255 (1923). Neither is plaintiff compelled to engage the City in a formal *pas de deux* by formally applying for a license in the face of the City's regulatory maze, the clear proscriptions issued by the Department of Buildings and the unequivocal statement of the Queens Borough Superintendent that he will not approve plaintiff's plans.

Had plaintiff formally applied for a license, the present regulatory scheme would inevitably have precluded him from receiving a license. Indeed, the City has not pointed to one instance where a license such as that sought by plaintiff has been issued. To the contrary, the City has instituted a massive civil suit against over sixty amusement arcades for operating without a license; and it continues to issue criminal summonses every day. Plaintiff has sought a determination from the Queens Borough Superintendent of the legality of its plan and been told in no uncertain terms that it will not pass muster. Requiring plaintiff to seek a license formally at this point would merely delay an adjudication of its rights.

Plaintiff is in a position "between the Scylla of intentionally flouting [the Code] and the Charybdis of foregoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974). *See also Hogge v. Members of City Council*, 482 F.2d 575 (4th Cir. 1973), *cert. denied sub nom., Blair v. Joseph*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). Accordingly, the Court finds that the issues raised in plaintiff's complaint are presently justiciable.

### 2. *Abstention*

■ Defendants argue that because there are numerous criminal actions and a massive civil suit pending in the New York State courts, this court should decline jurisdiction, pursuant to the *Pullman* abstention doctrine. In *Pullman*, the Supreme Court held that in an action for an injunction, a district court could stay the federal action pending the outcome of a state action where uncertain state law issues might be determined and this, in turn, might obviate the need to decide a constitutional question. *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). The Court, however, is mindful that abstention is "[a]n extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). For several compelling reasons, the court finds defendants' abstention arguments unpersuasive.

### A. The Plaintiff is not a party to any of the pending state actions.

This plaintiff is not a party to any of the pending state criminal or civil actions, and this is critical. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). In *Doran*, three plaintiffs, proprietors of topless dancing establishments, brought an action for a declaratory judgment and an injunction against the enforcement of a town ordinance prohibiting such activities. During the action, one of the plaintiffs, M&L, continued to present topless dancing and was served with criminal summonses, while the other two, Salem and

Tim-Rob, ceased presenting topless dancing pending the issuance of a preliminary injunction by the Federal District Court. The Supreme Court ruled that M&L's action was barred by *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which requires a federal court to abstain rather than interfere with a pending state court criminal action.[4] On the other hand, the Court held that Salem and Tim-Rob could continue to seek declaratory and injunctive relief. 422 U.S. at 930, 95 S.Ct. at 2567.

The Court ruled that the abstention doctrine[5] is based on the principle that:

state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in Steffel, a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction.

*Id.* No state proceedings are pending which involve the present plaintiff. Nor can there be any question that its complaint raises issues satisfying federal jurisdictional requirements. It is also significant that the plaintiff seeks to operate principally as a restaurant with the video games as an incidental, though alluring, amusement. This possesses unique issues that distinguish the plaintiff from the arcades involved in the state proceedings, which operate solely as amusement arcades.[6]

B. *The Pullman Doctrine is inapplicable in this case.*

*Pullman* calls for abstention only where a pending state court adjudication would clarify relevant state statutory provisions that are unclear or ambiguous. *See also McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir. 1976). The regulations attacked in this case, when viewed together, are clear in their prohibition of amusement arcades in virtually every zone in New York City. Specifically, this plaintiff cannot get the required license from the City because (a) it is not located in Rockaway or Coney Island, and (b) as a Use Group 6 establishment, it will not be given a Certification of Occupancy to operate an amusement arcade.

Moreover, because the pending state actions involve only the zoning regulations, not the licensing regulations also attacked by plaintiff, the state adjudication might not even be dispositive of all state law issues involved in this case. "The mere possibility that a state court might declare [its own laws] unconstitutional is no ground for abstention." *Procunier v. Martinez*, 416 U.S. 396, 400–1, 94 S.Ct. 1800, 1805, 40 L.Ed.2d 224 (1974).

---

4. The *Younger* doctrine also applies when a state brings a civil proceeding, such as a public nuisance action, which is similar to a criminal prosecution. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The massive civil action brought by the City to close down over sixty amusement arcades is just such an action. However, the present plaintiff is not involved in that suit.

5. The *Doran* case is no less dispositive because the abstention issue arose under the *Younger* abstention doctrine, rather than the *Pullman* abstention doctrine relied on by defendants in this case. Underlying both variants of the abstention doctrine is the principle of comity. Moreover, unlike *Younger*, the *Pullman* doctrine is concerned with the plight of the individual plaintiffs involved. The Federal courts have declined to abstain where protracted periods of delay would be required to resolve state issues first. *See, e.g., Pike v. Bruce Church Inc.*, 397 U.S. 137, 139, 90 S.Ct. 844, 845, 25

L.Ed.2d 174 (1970); *Griffin v. School Board of Prince Edward County*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964). In a case such as this where the federal plaintiff is not involved in the state proceedings, and alleges different issues, the problem of delay would be even greater, justifying this Court in declining to abstain. This is especially true, where, as here, the only state court to deal with any of the issues raised by the plaintiff has expressly declined to deal with the constitutional issues. *See 414 Theatre Corp. v. Murphy*, 499 F.2d 1155, 1157 (2d Cir. 1974). Moreover, as discussed below, the *Pullman* doctrine is otherwise inapplicable to this case.

6. That plaintiff has the same counsel who represents various establishments involved in the state proceedings is irrelevant. *Doran v. Salem Inn, Inc., supra*, 422 U.S. at 728, 95 S.Ct. at 2566.

**C.** *Section 1983 claims are exempt from the Abstention Doctrine.*

Plaintiff has alleged claims under 42 U.S.C. § 1983. The duty of federal courts to protect citizens' civil rights under section 1983 has been repeatedly recognized. *See e.g., McNeese v. Board of Education*, 373 U.S. 668, 672, 83 S.Ct. 1433, 1435–36, 10 L.Ed.2d 622 (1963). Indeed, in *Mitchum v. Foster*, 407 U.S. 225, 240–43, 92 S.Ct. 2151, 2161–62, 32 L.Ed.2d 705 (1972), the Supreme Court held that the *Younger* doctrine did not apply to actions brought under 42 U.S.C. § 1983. Moreover, by enacting section 1983, "Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967).

**D.** *Abstention is inappropriate in light of Plaintiff's First Amendment Claims.*

Plaintiff also alleges that New York City's regulatory scheme violates its First Amendment rights. The Supreme Court has recognized that the harm resulting from delaying adjudication of plaintiff's First Amendment claims pending possible clarifications of state statutes by state courts mandates that abstention be avoided. *Mayor of the City of Philadelphia v. Educational Equality League*, 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974). *See also Bellotti v. Baird*, 428 U.S. 132, 150, 96 S.Ct. 2857, 2867–68, 49 L.Ed. 844 (1976). *Lake Carriers' Assn. v. MacMullen*, 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257 (1972); *England v. Medical Examiners*, 375 U.S. 411, 425–26, 84 S.Ct. 461, 470–71, 11 L.Ed.2d 440 (1964) (Douglas, J. concurring). Indeed, requiring this plaintiff, who is not even a party to the state actions "to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler v. Koota, supra*, 389 U.S. at 252, 88 S.Ct. at 397–98. *See also Baggett v. Bullitt*, 377 U.S. 360, 378–79, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964).

This reasoning is all the more compelling here because one state court has already declined to review constitutional claims similar to those alleged by this plaintiff, *L-Jo Amusements, Inc. v. City of New York*, New York County Clerk's Index No. 7497/81 (N.Y.Co.S.Ct.), and the other state criminal and civil actions apparently will result in only a piecemeal adjudication of the various components of the City's regulatory scheme. Because of the likelihood that the pending state actions will not result in a comprehensive determination of the First Amendment issues raised by the entire regulatory scheme, this court will retain jurisdiction and hear plaintiff's preliminary injunction motion forthwith to minimize the chilling effect on the First Amendment issues allegedly involved in this case.

For all of the above reasons, defendants' motion to dismiss is denied.

SO ORDERED.