Jasen, J.
In each of these cases we are asked to decide whether it is permissible to place a child adjudicated as a person in need of supervision (PINS) in a State training school for PINS children only.
Upon the petition of her mother, the Family Court adjudicated the appellant, Lavette M., then 13 years of age, a person in-need of supervision (PINS), and placed her on probation for one year with a provision for mandatory counseling. Shortly thereafter, upon a finding that she absented herself from home without permission, probation was revoked and, pending further placement, appellant was remanded to Callagy Hall, a shelter operated by the Commissioner of Social Services, and later transferred to Children’s Center. Upon condition that she accept a Division for Youth Title II placement[1], appellant was *140 again placed on probation. After one day at the Division for Youth South Lansing Facility, appellant left and was again charged with a violation of probation. Following two unsuccessful efforts at private placement and after notification by South Lansing officials that no further placement would be accepted there, a dispositional hearing was held. A psychologist’s recommendation, as related to the court by a probation officer, was to the effect that appellant required “ a highly structured setting ” — • i.e., a training school. A psychiatrist’s report, on the other hand, recommended that she be placed in a “ group setting home ”. The court, noting that appellant could not return home, and that prior placements — probation and at South Lansing — were unsuccessful, ordered the appellant placed at a State training school for 18 months. Appellant was ultimately assigned to the Hudson State Training School, an all PINS facility. Upon appeal to the Appellate Division, First Department, that court affirmed by a closely divided vote.
Upon the petition of a social worker for a foster care agency, Maurice 0., a runaway child then 13 years of age, was found to be a person in need of supervision. The PINS petition recited a history of absconding from foster homes and the fact that the whereabouts of Maurice’s parents was unknown. A court psychiatrist was of the opinion that Maurice had poor judgment, was unable to get along with companions and required residential treatment. Just prior to the court’s decision on the PINS petition, Maurice absconded from the shelter where he was staying and was picked up by the police in Washington, D. 0., while attempting to board an airplane with a forged ticket. Subsequent to the PINS adjudication, but prior to the dispositional hearing, Maurice absconded on three separate occasions to Chicago, Cleveland and Fort Lauderdale. An additional psychiatric report submitted to the court recommended placement in a secure setting and the court liaison officer recommended placement at a State training school. The court, noting Maurice’s history of absconding from private facilities, ordered him placed in the Tryon State Training School, also an all PINS facility. Originally assigned to Tryon’s regular program at Pinewood Cottage, he was subsequently assigned to the slightly more structured Elmwood Cottage program. The Appellate Division, Second Department, unanimously *141 reversed the order of the Family Court and remitted the matter for further proceedings with regard to the placement of Maurice in a “ suitable environment The Appellate Division, in granting leave to appeal to our court, certified the following question: “ Was the order of this court dated April 2, 1974 properly made? ”
It is urged that placement of a PINS child in a training school is unlawful per se under our decision in Matter of Ellery C. (32 N Y 2d 588). We disagree. The main thrust of óur holding in Ellery C. was that it is inconsistent with the statutory right to “ supervision ” and “ treatment ” to place PINS children in institutions in which juvenile delinquents are confined. (32 N Y 2d, at p. 591.) We said it is the confinement of PINS children in a prison atmosphere along' with juveniles convicted of committing criminal acts that is proscribed, and not the fact alone of placement in a training school. Put another way, it is the adequacy of the supervision and treatment there provided, not the characterization of the facility as a training school, that is determinative.
We are well aware of the current preference for expanded use of community agencies, community residential centers and similar shelters for the treatment of nondelinquent children who are beyond or without parental control. (See, e.g., President’s Commission on Law Enforcement and Administration of Justice. The Challenge of Crime in a Free Society, p. 80; Task Force Report: Juvenile Delinquency and Youth Crime, p. 19.) But, absent a clear showing that the treatment provided at a training school is significantly inadequate to the task, the current experiment with training school placement for PINS children, as authorized by statute (Family Ct. Act, § 756), should be permitted. On the total record before us, we cannot assume that the necessary initiatives to establish a fully adequate program of supervision and treatment for PINS children at the training schools, already begun, will not be carried to fruition (Cf. Commonwealth v. Hogan, 341 Mass. 372.) A different question will be presented if at a later time it appears that it has not. But for the present, we note that the Division for Youth has made a commendable start toward upgrading the Tryon and Hudson Training Schools *142 and implementing the PINS child’s right to necessary care and treatment. Both schools áre coeducational and employ the semiautonomous cottage concept, or a variation thereof. Group counseling and therapy are integral aspects of the cottage concept. Regular and remedial educational programs are offered. Each school employs, on a part-time basis at present, a psychiatrist who performs an initial evaluation and follow-up care on an as-needed basis. Each also employs a psychologist who performs diagnostic testing for new residents. Pursuant to a model staffing program presently being implemented by the Division for Youth, the Tryon School has been authorized one additional full time and one part-time psychologist. Additional counselors and social workers, we are told, will be added to each school.
We are frank to acknowledge the practical limitations upon the power of the courts to determine the adequacy and effective- ' ness of treatment afforded PINS children. By what yardstick shall we measure? Surely the role of formulating criteria to measure the effectiveness of treatment facilities is not and should not be an exclusively judicial function. It should not be our province to determine what is the best possible treatment or to espouse an ideal but perhaps unattainable standard. Rather, our role should be to assure the presence of a bona fide treatment program.
Our function so limited, the perimeters of the right to treatment may be defined. There must be a bona fide effort to adequately treat the child in need of supervision in the light of present knowledge. Where the State, as parens patriae, involuntarily places a PINS child in a training school, it is for the purpose of individualized treatment and not mere custodial care.[2] Whatever the altruistic theory for depriving the child of his liberty, if proper and necessary treatment is not forthcoming, a serious question of due process is raised. (See Rouse v. Cameron, 373 F. 2d 451; Wyatt v. Stickney, 325 F. *143 Supp. 781, 785.) Nor can the failure to provide suitable and adequate treatment be justified by lack of staff or facilities. (Cf. Matter of Kesselbrenner v. Anonymous, 33 N Y 2d 161; see, also, Rouse v. Cameron, supra, at pp. 457-458.) Thus, it is also that the right to treatment embraces a requirement of initial diagnosis and of periodic assessment of the PINS child’s needs in order that individualized treatment may be revised as the diagnosis develops. Beyond this, we need not go at this time.
The order of the Appellate Division in Matter of Lavette M. should be affirmed. In Matter of Maurice C., the order of the Appellate Division should be reversed, the question certified answered in the negative, and the order of the Family Court, Kings County, reinstated. In each case, our decision is without prejudice to an application to the Family Court for appropriate relief should it appear ;at any time that adequate treatment and supervision is not being provided. (See, e.g., Family Ct. Act, § 762; Matter of Ilone I., 64 Misc 2d 878.)
Chief Judge Bbeitel and; Judges Gabbielli, Jones and Waohtleb concur; Judges Babin and Stevens taking no part.
In Matter of Lavette M.: Order affirmed, without costs, but with leave to apply to Family; Court, Bronx County, for relief in accordance with opinion herein.
In Matter of Maurice C.: Order reversed, without costs, and order of Family Court, Kings; County, reinstated with leave to ’ apply to Family Court for relief in accordance with opinion herein. Question certified answered in the negative.

. Such placements include camp residences and residential and nonresidential work training programs. (See Executive Law, §§ 502-509.)

. One commentator has observed that “ the right to treatment in the case of one whose behavior presents no community danger and does not contravene the criminal law, subsumes a paradox — namely, a right not to be treated unless there is a positive likelihood of that treatment yielding beneficial result ” (Gaugh, The Beyond-Control Child and the Right to Treatment: An Exercise in the Synthesis of Paradox, 16 St. Louis U. L. J. 182, 194).