Patricia McREDMOND et al., by their attorney and next friend Charles Schinitsky, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Malcolm WILSON, Individually and as Governor of the State of New York, et al., Defendants.

No. 74 Civ. 4948.

United States District Court, S. D. New York.

June 23, 1975.

---

Charles Schinitsky, The Legal Aid Society, Brooklyn, N. Y., for plaintiffs; Gene B. Mechanic, Michael J. Dale, Brooklyn, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Margery Evans Reifler, Asst. Atty. Gen., of counsel.

GAGLIARDI, District Judge.

This is a civil rights class action brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4). The seven named plaintiffs are members of a class of persons who have been adjudicated Persons In Need of Supervision ("PINS") by the Family Courts of the State of New York and placed into one of the four New York State Training Schools for PINS. Defendants, who are each sued individually and in their official capacity, are the Governor of the State of New York; four officials of the New York State Division for Youth, which operates the training schools; the superintendents of the four training schools; and seven Family Court judges, both individually and as representatives of all other Family Court judges in the State of New York. In general, plaintiffs by this action challenge the constitutionality and legality under New York State law, of defendants' action of placing plaintiffs in the four New York State training schools for PINS.

More specifically, plaintiffs have asserted eight claims in their complaint: (1) that the placement of PINS in training schools geographically distant from their families, friends and communities constitutes cruel and unusual punishment in violation of plaintiffs' rights under the eighth amendment; (2) that the placement of PINS in training schools violates plaintiffs' first amendment rights to freedom of travel and association; (3) that the deprivation of liberty suffered by plaintiffs solely by virtue of their status as PINS can be justified under the due process Clause of the Fourteenth Amendment and under other federal and New York State constitutional provisions only if

plaintiffs receive adequate and appropriate treatment, which the training schools do not and are unable to provide; (4) that the deprivation of liberty suffered by PINS without their having received the full panoply of due process rights required in criminal proceedings can be justified under the due process clause of the fourteenth amendment and under other federal and state constitutional provisions only if plaintiffs receive adequate and appropriate treatment, which the training schools do not and are unable to provide; (5) that the placement of PINS in training schools which fail to provide adequate and appropriate treatment constitutes cruel and unusual punishment in violation of plaintiffs' rights under the eighth amendment; (6) that the placement of PINS in training schools violates their right to receive the least restrictive treatment alternative pursuant to the due process clause of the fourteenth amendment and other federal and state constitutional provisions; (7) that the placement of PINS in state training schools denies them equal protection of the law because "neglected children" are not placed in training schools; (8) that the failure to provide adequate and appropriate training, care and rehabilitation to plaintiffs violates New York Executive Law §§ 501, 510 and 511, and New York Family Court Act §§ 255, 711 and 732.

A number of motions are now pending. Plaintiffs have moved for class action determinations. The class which plaintiffs seek to represent includes all persons who, based upon a PINS adjudication, are presently placed, are on parole from placement or are subject to placement in the four state training schools. In addition, plaintiffs seek to maintain this action against a class of defendants composed of all Family Court Judges of the State of New York who, in their official capacities, are empowered to order that plaintiffs and their class be placed in state training schools. Plaintiffs have further moved for a preliminary injunction restraining defendants from placing or continuing the placement of plaintiffs and their class in state training schools, and directing that they be placed in programs which provide adequate and appropriate treatment. Defendants have moved to dismiss the complaint on various grounds pursuant to Rule 12(b), Fed.R.Civ.P., and have requested that the court abstain from exercising its jurisdiction. For the reasons set forth below, the court concludes that this is a proper case for the application of the abstention doctrine and, therefore, will not at this time decide the pending motions.

In *Reid v. Board of Education of the City of New York*, 453 F.2d 238 (2d Cir. 1971), the facts of which are closely analogous to the facts presented by the instant case, the Court of Appeals upheld the decision of the district court to abstain. That case was a civil rights class action brought on behalf of all brain-injured children eligible for special public school classes for the handicapped. The action was based upon a claim that the defendant Board of Education deprived plaintiffs of due process of law, equal protection of law, and the right to a free public education, all in violation of the fourteenth amendment, by failing to screen applicants for special classes within a reasonable time and by failing to provide special classes for all eligible children.

Plaintiffs in *Reid* did not assert pendent state law claims in their complaint. The Court, however, noting that plaintiffs had a substantial claim under provisions of both the New York Education Law and the New York Constitution, held that "where a decision under state law might obviate the necessity of a federal constitutional determination, but the state law is unclear and a federal adjudication under the court's pendent jurisdiction would thrust the federal courts into a sensitive area of state administration, the federal courts should abstain." *Supra,* 453 F.2d at 240. Applying this holding to the facts in *Reid,* the Court stated that it was not aware of any state court decision defining the obligations of the Board of Edu-

cation under either the Education Law or the state constitution, and that such a decision by the state courts might result in a determination that the board of education was in default of its obligations by failing to provide prompt screening and placement for all eligible brain-injured children. Thus, the state law was unclear, and a decision under it might have obviated the necessity of a federal constitutional determination. The Court further found that because the New York legislature had provided in the Education Law a broad scheme for the education for handicapped children, the case involved a sensitive area of state regulation.

Turning now to the facts of the instant case, plaintiffs have appended state claims to their complaint. In addition to the constitutional claims asserted, plaintiffs allege that defendants are obliged to provide "adequate and appropriate training, care and rehabilitation" to PINS under sections 501, 510 and 511 of the New York Executive Law and sections 255, 711 and 732 of the New York Family Court. Section 255 of the Family Court act provides Family Court Judges with the power and means to effectuate the general purpose of giving the children within the jurisdiction of the Family Court "such care, protection and assistance as will best enhance their welfare." N.Y.Fam.Ct. Act § 255 (McKinney Supp.1974). Section 511 of the Executive Law specifically provides that training schools "shall be for the training, care and rehabilitation" of PINS. N.Y.Exec.Law § 511(1) (McKinney 1972). The New York Court of Appeals ("New York Court") has upheld the existence of a statutory right to "adequate supervision and treatment." *Matter of Ellery C.*, 32 N.Y.2d 588, 591, 347 N.Y.S.2d 51, 53, 300 N.E.2d 424, 425 (1973). It thus appears clear that plaintiffs have a substantial statutory claim under New York law.

In its most recent opinion on the subject, the New York Court reaffirmed the existence of the statutory right to treat-

ment and defined the "perimeters" of that right. *Matter of Lavette M.*, 35 N. Y.2d 136, 141–143, 359 N.Y.S.2d 20, 23–24, 316 N.E.2d 314, 317 (1974). While setting forth the broad outlines of an adequate treatment program, the New York Court expressly reserved a more complete consideration for a case properly raising the issues: "On the total record before us, we cannot assume that the necessary initiatives to establish a fully adequate program of supervision and treatment for PINS children at the training schools, already begun, will not be carried to fruition (citation omitted). A different question will be presented if at a later time it appears that it has not." *Id.*; compare with *Elgin v. Silver*, 9 A.D.2d 645, 192 N.Y.S.2d 475 (1st Dep't 1959), quoted in *Reid v. Board of Education, supra*, 453 F.2d at 243–244. In concluding, the New York Court again noted that, "Beyond this, we need not go at this time." *Supra*, 35 N.Y.2d at 143, 359 N.Y.S.2d at 24, 316 N.E.2d at 317. Thus, beyond the broad perimeters, the right to treatment under state law remains undefined and unclear.

It further appears that a decision under this unclear state law might obviate the necessity of a federal constitutional determination. Certainly a state court decision on the question of whether or not the present program and conditions at the training schools fulfill the statutory right to treatment might moot or modify the federal constitutional issues presented here. This applies to the non-treatment as well as the treatment claims. For example, plaintiffs allege that a prerequisite for providing "adequate and appropriate treatment" is "a family environment which fosters intimacy, respect and trust," and that "because of the training schools' geographic isolation, plaintiffs are not able even to have consistent contact with any families." Complaint, Paragraph 49. If this allegation were to be sustained by a state court construing state law, a determination by this court on plaintiffs'

claim that the placement of PINS in training schools geographically distant from their families constitutes cruel and unusual punishment in violation of the eighth amendment of the federal constitution would become unnecessary.

In opposition to abstention, plaintiffs cite *Martarella v. Kelley,* 349 F.Supp. 575 (S.D.N.Y.1972), an action challenging the constitutionality of temporarily detaining PINS in "maximum security" facilities. The defendants in that case improperly raised the issue of abstention and confused it with the issue of subject matter jurisdiction. *Id.* at 593. In any event the defendants apparently did not cite the *Reid* case, and the district court entertained an application for declaratory and injunctive relief. The *Martarella* case actually serves as a good example of the wisdom of abstention under appropriate circumstances. One of the claims advanced in *Martarella* was that the common custody of PINS and juvenile delinquents ("JDs") in temporary detention facilities violated the equal protection clause and other federal constitutional provisions. The district court discussed the issues raised and held that the common custody of PINS and JDs was not unconstitutional. Less than one year after the *Martarella* case was decided, the New York Court in *Matter of Ellery C., supra,* held that the common custody of PINS and JDs in the state training schools did not meet the standards of "supervision" and "treatment" contemplated by the Family Court Act. Had the *Martarella* Court abstained, the decision under state law in *Ellery C.* would have obviated the necessity of a federal constitutional determination.

Finally, abstention is appropriate here because, as in *Reid,* the action concerns a sensitive area of state administration. The New York statutory scheme for the adjudication and treatment of PINS is both broad and complex. Section 712(b) of the Family Court Act defines a PINS as "a male less than sixteen years of age and a female less than eighteen years of age who does not attend school in accord with the provisions of part one of article sixty-five of the education law or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority."\* N.Y.Fam.Ct. Act § 712(b) (McKinney Supp. 1974). A PINS proceeding is initiated by the filing of a petition alleging that the child falls within one of these categories and is in need of supervision or treatment. Fam.Ct. Act § 732. A PINS proceeding is conducted in the Family Court in two stages: (1) a "fact-finding hearing" pursuant to section 742 to determine whether the child committed the acts alleged in the petition; (2) a "dispositional hearing" pursuant to section 743 to determine whether the child requires supervision or treatment. If a child is adjudicated a PINS, an order of disposition must be entered either discharging with warning, suspending judgment, placing on probation or continuing the proceeding and placing pursuant to section 756. Fam.Ct. Act § 754. Section 756(a) provides that a PINS may be placed by the court "in its own home or in the custody of a suitable relative or other suitable private person or a commissioner of social services or an authorized agency including the division for youth pursuant to article nineteen-G of the executive law . . . ." Under section 501(6) and Title III of Article 19–G of the Executive Law, the New York State Division for Youth is authorized to operate and maintain state training schools for PINS. There are extensive regulations, promulgated pursuant to Article 19–G of the Executive Law, which further govern the operation of the state training schools. *See* 9A N.Y.C.R.R. Parts 168, 169, 171.

The above is merely a broad outline of the comprehensive statutory scheme en-

---

\* Females over the age of 15 are no longer subjected to PINS proceedings. *A. v. City of New York,* 31 N.Y.2d 83, 335 N.Y.S.2d 33, 286 N.E.2d 432 (1972).

acted by the New York State legislature to deal with PINS. The statutes have been amended from time to time and have been the subject of frequent application and interpretation by the state courts. As noted earlier, the case law concerning the statutory right to treatment has been evolving to the point where the New York Court has indicated a willingness to fully define the statutory right to treatment in an appropriate case. *See Matter of Lavette, M., supra; Matter of Ellery C., supra.* In its last opinion on the subject, the New York Court expressly left open for future determination the question of whether the training schools have established "a fully adequate program of supervision and treatment for PINS . . . ." *Matter of Lavette M., supra,* 35 N.Y.2d at 141, 359 N.Y.S.2d at 23, 316 N.E.2d at 317. A federal constitutional determination at this time on the issues raised in the instant action would disturb the evolution of the New York case law and would needlessly thrust the federal courts into a particularly sensitive and complex area of state regulation. A state court decision, on the other hand, might avoid a decision under the federal constitution and "would avoid any possible irritant in the federal-state relationship." *Reetz v. Bozanich,* 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1969).

The decision to abstain in this case does not in any way reflect the court's view of the merits of the case. However the court deems the allegations contained in the complaint herein to be of a sufficiently serious nature as to warrant reasonably prompt consideration by an appropriate court. State court proceedings should be expeditiously commenced by plaintiffs, and it is the hope of this court that the matter will be heard by the state courts without undue delay. In the meantime, this court will retain jurisdiction and, in the event of unreasonable delay in the state court proceedings, will · entertain an application to reactivate the case.