**Richard LUCAS et al., Plaintiffs,**

v.

**Joseph WASSER, Individually and as Sheriff of Sullivan County, et al., Defendants.**

**No. 76 Civ. 1057 (HFW).**

United States District Court,
S. D. New York.

Aug. 26, 1976.

Michael J. Goldberg, David L. Posner, Mid-Hudson Valley Legal Services Project (Monroe County Legal Assistance Corp.), Monticello, N.Y., and Daan Braverman, Greater Up-State Law Project, Monroe County Legal Assistance Corp., Rochester, N.Y., for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of N.Y., by Jules E. Orenstein, Asst. Atty. Gen., New York City, for defendants Commissioners of the New York State Commissions of Correction.

### OPINION

WERKER, District Judge.

This is a suit brought on behalf of all pre-trial detainees at the Sullivan County Jail (hereinafter "SCJ") seeking declaratory and injunctive relief under 42 U.S.C. § 1983, based on the conditions under which they are so confined. Plaintiffs claim that the jail conditions at the SCJ violate the first, sixth, eighth, ninth and fourteenth amendments of the United States Constitution. The conditions complained of include unduly repressive confinement practices, inhumane confinement, enforced idleness, inadequate medical care, and inadequate visiting privileges and facilities. Plaintiffs further allege the unconstitutionality of limitations on access to the courts through restrictions on visits, correspondence and telephone calls to and from attorneys and excessively limited access to an inadequate law library. Additional sources of complaint include restrictions on letter-writing and the perusal of inmate mail, both incoming and outbound, limitations on acquiring personal property, inadequate diet and a lack of sanitary procedures in the preparation and service of food. Plaintiffs allege that restrictions on access to literature, arbitrary and capricious imposition of punishment for disciplinary infractions, and lack of an effective grievance procedure also violate their constitutional rights. Amongst their other contentions plaintiffs claim that the equal protection clause of the fourteenth amendment is violated because they are

subjected to more punitive and oppressive conditions than are convicted felons in the state.

Sued as defendants are Joseph Wasser and William Forsbach, the sheriff and undersheriff of Sullivan County, Isidore Greenberg, the Sullivan County Jail physician, the members of the Sullivan County Board of Supervisors, Herman Schwartz, Acting Chariman of the New York State Commission of Correction (hereinafter the "Commission"), and Eugene Le Fevre and Dorothy Wadsworth, Acting Commissioners of the Commission, and the Commission itself. The nomination of Herman Schwartz[1] and the Acting Commissioners has not been affirmed by the New York State Senate.

The motion for consideration by the court is a motion to dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted under Rules 12(b)(1) and 12(b)(6) respectively of the Federal Rules of Civil Procedure, brought by counsel for Herman Schwartz, Eugene Le Fevre and Dorothy Wadsworth (hereinafter the "State defendants").

The motion to dismiss is based on the contention that the issues raised in this case are non-justiciable. The State defendants' argument has three branches. First, the State defendants raise an issue of "ripeness," arising out of the fact that the composition of the Commission has not yet been determined. As a result, what position the ultimate Commission and Chairman of the Commission are likely to take with respect to this action is uncertain. The State defendants also contend that the issues of the case are moot as to the State defendants named in the complaint since they are no longer either Chairman or acting members of the Commission. The second branch of the motion is based on the fact that Article 3 of the Correction Law, N.Y. Correction Law § 40 et seq. (McKinney 1962), as amended, N.Y. Correction Law § 40 et seq (McKinney Supp. 1975) has recently been amended conferring greater powers on and increasing the function of the Commission. The State defendants urge that this court exercise equitable restraint and refrain from granting the injunctive relief requested since the State defendants may exercise their additional powers and thereby negate the need for seeking relief in federal court and also because there has been no adjudication of the issues of this case in a state court. The third contention made by the State defendants is that the complaint fails to specifically charge the State defendants with any violation of the plaintiffs' civil rights and that there is no causal link between plaintiffs' claims and the State defendants' actions. They contend also that at most any deficiency in their conduct would amount only to a statutory violation or a violation of the state constitution rather than a violation of any of plaintiffs' federal constitutional rights.

### Uncertainty in the Composition of the Commission

The possible ultimate composition of the Commission and the uncertainty in its position with regard to this suit does not properly raise a basis for a motion to dismiss. The plaintiffs have alleged that their rights are presently being violated. The fact that the Commission may align itself with the plaintiffs is a purely hypothetical possibility. The actions of the Commission as it is presently constituted are alleged to violate plaintiffs' constitutional rights at the present time. This is sufficient to state a cause of action. The eventual Commission would be free at any time in the future to enter into a consent judgment with the plaintiffs if it so chose. The fact that the parties presently named no longer hold their positions does not moot the case. A substitution of the new parties would take place automatically under the Federal Rules of Civil Procedure, Rule 25(d).

---

1. An article in the July 29, 1976 edition of the New York Law Journal, p. 2., col. 2, indicated that Governor Carey had nominated Rev. Stephen Chinlund to be Chairman of the State Commission of Correction. Reverend Chinlund's nomination had not yet been confirmed by the New York State Senate.

The fact that the powers of the Commission have been newly expanded under the new statute does not make this case an appropriate one for the exercise of the doctrine of abstention. Abstention is appropriate only where a state law is uncertain and where a state tribunal is the only authoritative source of construction. *Wisconsin v. Constantineau,* 400 U.S. 433, 438, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The new Article 3 of the Correction Law, although somewhat extensive, is not ambiguous or uncertain. Because its details are carefully drafted it is susceptible of interpretation and construction by a federal court.

Effective on September 8, 1975, the statute created the State Commission of Correction (formerly the Commission of Correction) and endowed it with the power to advise the governor regarding the development of programs for the improvement of the administration and delivery of services to correctional facilities. N.Y. Correction Law § 45(1) (McKinney Supp. 1975). By contrast, the former statute stated in the following general terms that the Commission was to "[a]dvise the officers of [institutions for the detention of sane adults charged with or convicted of a crime and subject to the control of the commissioner of correction] in the performance of their official duties." N.Y. Correction Law § 46(2) (McKinney 1968), *as amended,* N.Y. Correction Law § 45(2) (McKinney Supp. 1975). The Commission is presently required to promulgate procedures to effectively investigate grievances and conditions affecting inmates of local correctional facilities and to review grievances referred to it by the commission of correctional services.[2] This is to include but not be limited to the receipt of written complaints, interviewing of persons and on site monitoring of complaints. This subsection further provides that the Commission is to place members of its staff as monitors in local correction facilities which present "an imminent danger to the health, safety or security of the inmates or employees of such correctional facility . . ." N.Y. Correction Law § 45(7) (McKinney Supp. 1975). Moreover, the Commission is required to establish and operate a training program of personnel employed by correctional facilities except where particular correctional facilities operate such training programs of an equal or better quality than that of the Commission and those personnel thus trained possess sufficient qualification for the care of persons confined in correctional facilities. N.Y. Correction Law § 45(9) (McKinney Supp. 1975). Whereas the erstwhile Commission was directed merely to collect statistical information concerning accounting matters and the numbers and conditions of inmates in institutions, the statute now requires that the information be acquired and research be undertaken with respect to the "administration, programs, effectiveness and coordination of correctional facilities," and that this information be disseminated. N.Y. Correction Law § 45(11) (McKinney Supp. 1975). The former statute required merely that the commission "[s]ecure the best sanitary conditions of the buildings and grounds of all such institutions, and protect and preserve the health of the inmates." N.Y. Correction Law § 46(5) (McKinney 1968). The new statute further elaborates on this duty by requiring the appraisal of the management of correctional facilities with specific regard to safety, security, health, sanitary conditions, rehabilitative programs, disturbance and fire prevention and control preparedness and the adherence to regulations governing the rights of inmates. N.Y. Correction Law § 45(3) (McKinney Supp. 1975). New Article 3 further provides for the institution of a "correction medical review board," whose function is to investigate and review the

---

2. The contemplated regulations with regard to grievance procedures have been promulgated with respect to state institutions but have not yet been promulgated for county institutions. *Administrative Guidelines for the Inmate Grievance Procedures* (unpublished). However, the new minimum standard regulations required by § 45(6) of the new New York Correction law (McKinney Supp. 1975) have been promulgated as of June 24, 1976 and will be effective as of October 1, 1976.

circumstances surrounding the death of an inmate at a correctional facility, and to investigate and report to the Commission the nature of the medical care delivered to inmates of correctional facilities. N.Y. Correction Law § 47 (McKinney Supp. 1975). The new law authorizes the Commission to issue and enforce subpoenas and subpoenas duces tecum as well as to administer oaths and examine persons under oath in seeking information necessary for the carrying out of the Commission's functions and duties. N.Y. Correction Law § 46(1), (2) (McKinney Supp. 1975). While under the former statute the power of the Commission to enforce rules or regulations was restricted to the power to close a non-complying facility, the new statute, while preserving that power, provides that the Commission can notify a person in charge of a facility of violations of rules or regulations and direct compliance. Upon the failure of such a person to comply, the Commission can apply to the New York State Supreme Court for an order directing compliance. A failure to comply with such an order is punishable by contempt. N.Y. Correction Law § 46(3) (McKinney Supp. 1975).

■ The basic policy behind the doctrine of abstention, a doctrine of extraordinary application, is the avoidance of needless friction in state-federal relations. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). In *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court enunciated the policy behind the doctrine of abstention. The Supreme Court, reviewing the history of cases in which the Court considered the public consequences of granting equitable relief, stated:

> "These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. See *Cavanaugh v. Looney,* 248 U.S. 453, 457, 39

S.Ct. 142, 143, 63 L.Ed. 354; *Di Giovanni v. Camden Ins. Assn.,* 296 U.S. 64, 73, 56 S.Ct. 1, 5, 80 L.Ed. 47. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers." *Id.* at 501, 61 S.Ct. at 645.

Considerations of federal-state relations which might otherwise call for abstention by a federal court must give way in this instance where a possible violation of plaintiffs' federal constitutional rights is a dominant concern. The central issue here is the standard which must be maintained for the detention of pretrial detainees in a county facility consistent with the Constitution and whether or not that standard is being maintained. Essentially this is a question of the requirements of the due process and equal protection clauses of the fourteenth amendment. Any factual questions attendant thereto can as well be resolved by a federal court as by a state court.

■ In *McRedmond v. Wilson,* 533 F.2d 757 (2d Cir. 1976), the Second Circuit recently found that the district court had improperly invoked the doctrine of abstention. The case arose out of a constitutional challenge to the New York State policy of placing persons adjudicated as Persons in Need of Supervision in allegedly constitutionally inadequate training schools located at great distances from their homes. The Second Circuit there indicated that:

> "Resolution of that issue does not turn upon construction of any unclear state statute or statutory scheme controlling the extent of treatment to be accorded PINS, the interpretation of which might avoid or modify the federal constitutional issue. The relevant state statute is § 255 of the Family Court Act, which assures PINS of such 'care, protection and assistance as will best enhance their welfare.' This statute has twice been construed by the New York Court of Appeals as entitling PINS as a matter of 'due process' to adequate treatment. See *Lavette M. v. Corporation Counsel of the City of New*

*York,* 35 N.Y.2d 136, 359 N.Y.S.2d 20, 316 N.E.2d 314 (1974); *Matter of Ellery C. v. Redlich,* 32 N.Y.2d 588, 347 N.Y.S.2d 51, 300 N.E.2d 424 (1973). Application of the key statutory clause does not require intricate or penetrating statutory interpretation best left to the state. On the contrary, the right to treatment, as New York's highest court has indicated in its interpretation of the statute, is subject to basic constitutional due process principles, of which the state courts are not the final expositors. Indeed, as the New York Court of Appeals recognized, the question is one of fact rather than of statutory interpretation. The court must, on the record before it in a particular case, determine whether PINS are being provided with an adequate program of supervision and treatment that will furnish certain essential components, including counseling, therapy, education and diagnosis, as distinguished from 'mere custodial care.' If not, 'a serious question of due process is raised.' *In re Lavette, supra,* 35 N.Y.2d at 142, 359 N.Y.S.2d at 24, 316 N.E.2d at 317. We have no reason to believe that the federal court is any less equipped to engage in this factual inquiry than is its counterpart at the state level. *Id.* at 762.

Although an interpretation by a state court of the new statute is lacking here, as indicated previously the state statutory scheme is clear and is capable of interpretation by a federal court. In all other respects this case is directly analogous to *McRedmond.* The issue is one essentially of fact rather than statutory interpretation, that is whether pretrial detainees are being confined in accordance with the standards of the due process and equal protection clauses. As noted in *McRedmond, supra* at 762, federal courts routinely hear challenges to the conditions under which inmates are held:

> Indeed, § 1983 challenges to the constitutionality of institutional treatment of inmates, including juveniles and mental patients, are now routinely heard by federal courts, see *O'Connor v. Donaldson, supra*

[422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396]; *Nelson v. Heyne,* 491 F.2d 352 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974); *Morales v. Turman,* 383 F.Supp. 53 (E.D.Tex.1974); *Martarella v. Kelley,* 349 F.Supp. 575 (S.D.N.Y.1972); *Inmates of Boys' Training School v. Affleck,* 346 F.Supp. 1354 (D.R.I.1972); *Lollis v. Department of Social Services,* 322 F.Supp. 473 (S.D.N.Y. 1970), even though, as here, similar challenges might have been asserted in state forums by relying upon state due process provisions or statutes promising in general terms 'care,' 'treatment,' and the like." *Id.* at 762.

Thus, even though suit might have been brought in state court, this does not present a sufficient reason for this court to abstain here. As was *McRedmond,* this case is distinguishable from *Reid v. Board of Education,* 453 F.2d 238 (2d Cir. 1971) in which the Second Circuit felt abstention to be appropriate. *Reid* involved a suit by the parents of brain-injured children who alleged that the New York school system had violated their children's constitutional rights by failing to screen applicants for special classes within a reasonable time and by failing to provide such classes for all eligible children. There a federal constitutional determination would be obviated, the Second Circuit thought, by a decision under state law as to whether or not state statutory and state constitutional provisions with regard to the furnishing of facilities for the treatment of the handicapped and the maintenance of schooling for children had been violated. Said the court,

> "Under these circumstances, where a decision under state law might obviate the necessity of a federal constitutional determination, but the state law is unclear and a federal adjudication under the court's pendent jurisdiction would thrust the federal courts into a sensitive area of state administration, the federal courts should abstain." *Id.* at 240.

The claim here, that pretrial detainees are being deprived of their liberty in an uncon-

stitutional fashion is distinguishable from that made in *Reid* in that it is of a much more fundamental nature than the claim in *Reid* to a right to special classes for brain-injured children. The plaintiffs, pretrial detainees, are subject to a severe restriction on their liberty. Although the federal courts are not unmindful of the importance of maintaining smooth federal-state relations, the assertion of federal constitutional claims in the context of this case here impels intervention by the federal courts. *Jones v. Metzger,* 456 F.2d 854 (6th Cir. 1972). It has not been unusual for federal courts to direct the implementation of plans to correct unconstitutional conditions in local prisons. *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974); *McRedmond v. Wilson, supra* at 762. As the United States Supreme Court stated in response to an argument in favor of abstention in *Procunier v. Martinez,* 416 U.S. 396, 405–406, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974), a suit involving a challenge to the constitutionality of a prison regulation concerning prisoner mail:

> "But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."

*Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (*per curiam*), cited by the State defendants, does not advance their argument in favor of abstention. *Carey* dealt with the constitutionality of New York's prejudgment attachment statute. Since the Supreme Court felt a constitutional construction of the statute were possible if interpreted to require a preliminary hearing on the merits of the plaintiff's claim, it directed abstention from a decision on the issue until the statute could be reviewed by the New York courts. That ruling has no applicability to the facts of this case where no ambiguity in the statute requires preliminary construction by a state court.

■ Contrary to the argument of the State defendants, there is an actual case or controversy here. In *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), cited by the State defendants, the Supreme Court found lacking the article III case or controversy requirement in a suit under 42 U.S.C. § 1983 because of the remoteness of the alleged injury. The claimed injury in the suit which concerned police practices in the city of Philadelphia related to the potential conduct of unspecified policemen towards the plaintiffs because of any particular police officer's perception of departmental disciplinary procedures. By contrast, the alleged injury here is an immediate and concrete injury, not a hypothetical one. There is no question but that an actual case or controversy is presented to this court for determination. *See also O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Evans v. Lynn,* 537 F.2d 571 (2d Cir. 1976).

### Allegations in the Complaint Directed at the State Defendants

■ The State defendants' third contention is that they have not been charged with a violation of plaintiffs' civil rights and that only local officials are so charged. An examination of the allegations in the complaint reveals that this contention is without basis. For example, plaintiffs allege the failure of defendants to create a grievance procedure for prisoner complaints. This duty is specifically delegated to the Commission under N.Y. Correction Law § 45 (4) (McKinney Supp. 1975). Allegations of unhealthy conditions in the SCJ relate directly to the Commission which is specifically charged with the duty of inspecting and appraising jail facilities with regard to matters of health. N.Y. Correction Law § 45(3) (McKinney Supp. 1975). These allegations amount to more than mere violations of statutory rights but rise to the level of impingements on federal constitutional rights. *Inmates of Suffolk County Jail v. Eisenstadt,* 494 F.2d 1196 (1st Cir.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974). The joining of the

State defendants is essential if the plaintiffs are to obtain complete relief in light of the duties and functions which are reserved to the Commission. *Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284 (2d Cir. 1971). The State defendants share the responsibility for the proper operation of the SCJ.[3] *Inmates of Suffolk County Jail v. Eisenstadt, supra.* Unlike the situation in *Rizzo v. Goode, supra,* there is a direct causal link between the injury plaintiffs allege and the State defendants whose duties directly affect the conditions to which plaintiffs are subjected.

For the above reasons, the State defendants' motion to dismiss is hereby denied.

SO ORDERED.

---

**3.** The importance of the Commission to the correctional system of the State is demonstrated by the following excerpt from the Governor's Memorandum # 89–# 91 *1975 New York State Legislative Annual* (1975):

"The purpose of these bills is to establish a full-time and vigorous watchdog organization to oversee the performance of the State and local correctional system and to create a mechanism for the fair resolution of grievances in correctional institutions. . . .

The State of New York, with over 400 State and local correctional facilities, has one of the largest correctional systems in the country. It is of utmost importance that there be some independent and effective oversight of the operations of this system to assure the public that its performance meets or exceeds acceptable standards, that its practices are consistent with the goals of our criminal justice system and that the rights and responsibilities of inmates and correctional personnel are recognized and respected.

This bill provides for a three-man full-time Commission to oversee the operations of State and local correctional facilities, to formulate programs for the improvement of the correctional system and to create a system for the investigation and resolution of grievances in local correctional facilities. The valuable concept of citizen's input in overseeing the performance of the correctional system, which underlies the present Commission of Correction, has not been abandoned, although its limitations have been recognized. This bill places a full-time Commissioner in charge of the part-time citizen's policy and complaint review council and provides funds for an adequate supportive staff to assist the council in the performance of its duties. Unlike the present Commission, where ultimate responsibility resided with part-time members, this bill squarely places that responsibility upon the full-time Commission. The part-time council members are available to assist the Commission in fulfilling its responsibilities with respect to local correctional facilities and to provide for input from the community in the oversight and policymaking functions of the Commission."