OPINION OF THE COURT
Leah Marks, J.
I. THE FACTS
This delinquency petition was filed on June 25, 1980. A fact-finding hearing resulted in a finding that the respondent committed acts which if committed by an adult would constitute the crimes of attempted grand larceny in the third degree and jostling.
There were no prior findings, but there were some court contacts by the respondent leading to admissions to probation representatives of other unlawful activities of a similar nature.
The probation officer recommended placement under title 3 of the New York State Executive Law. The probation officer’s recommendation was based on the respondent’s record, including the volunteered statements, a psychological report, and a long series of referrals leading to 12 rejections from other resources, including the facilities operated by the New York State Division for Youth which were established under title 2 of the Executive Law. The *6 Law Guardian agreed with the general recommendation of placement and asked for placement under title 2 of the Executive Law suggesting that the court has the power to order such placement and should do so for this respondent because no prior findings exist, and the respondent does not have a violent nature.
The dispositional hearing began on March 17,1981, and ended on March 24, 1981. The evidence proved the respondent has a great need for educational services, some kind of therapy, and a degree of structure. The respondent was proven in need of adult supervision by adults who can be a positive role model, giving him guidance and support.
As with many respondents before the court, this one has some good qualities, but he needs substantial change in the direction his talents lead him. It was shown he needs guidance to assist him to work hard and find satisfaction in activities that are suitable for him, and safe and lawful for all of us.
Since the time the respondent came within this court’s jurisdiction, he has never been offered probation services, open placement facilities, or equivalent services. Thus, although the probation officer said the respondent would fail to benefit from such aids, no experience was presented supporting that conclusion.
II. THE GENERAL PLACEMENT DECISION
For any juvenile delinquent who must be removed from his home there are various types of placement available, less defined than we might wish, but clearly varying in the degree to which they are open facilities, ones the respondent might find easy to leave. The court’s obligation is to obtain assurance that society is adequately protected and there is a bona fide treatment program for the respondent. (Matter of Lavette M., 35 NY2d 136, 142.)
One valid reason for a title 3 recommendation would be that the public safety justifies such restraint based upon the respondent’s past activities. Another possibility would be that the treatment and other rehabilitative services most specifically needed by this respondent would be easier to obtain in the recommended, highly structured placement.
*7 The probation officer’s recommendation seems based upon the fact that other private and public facilities rejected the respondent. The probation officer testified that if the Division for Youth had admitted the respondent into a title 2 facility, that placement would have been the recommendation.
There was no proof presented that the respondent needs greater structure (or less openness) than is available in title 2. The respondent has not developed sophisticated methods indicating a trend toward becoming a professional with a propensity to commit this type of crime wherever he might be placed. The respondent is not the kind of streetwise, sophisticated, money-making youth depicted as a prime example for title 3 placement in Matter of Nathan N. (88 Misc 2d 1022, affd 56 AD2d 554).
Under title 2 placement the respondent is required by the Division for Youth to. seem motivated to accept its program. Their officials rejected him (without the benefit of a hearing) because they did not find the respondent sufficiently amenable to remaining voluntarily. They say he needs more structure.
Basic to this placement decision is the question of whether this court has the right to place a respondent in a title 2 program over the objection of the Division for Youth.
III. THE POWER TO PLACE IN TITLE 2
In deciding whether the court has the power to place the respondent in a title 2 facility over the objection of the Division for Youth, it is necessary to examine the Division for Youth’s powers and history. Even in 1960, when the legislation establishing the New York State Division for Youth was proposed, there were complaints that its powers were “couched in extremely vague language and there are no definite standards set forth to guide the division”[1] in its duties.
From 1963, subdivision 4 of section 502 of the Executive Law has stated in relation to title 2, “The division may in its discretion refuse to admit any youth if such admission would not be in the best interest of the youth.”
*8 When the New York State Division for Youth was established in 1963, its purpose as an agency was to offer preventive resources for those on “the threshold of delinquency.”[2] Originally, it had two types of centers: (1) opportunity centers, for the voluntary enrollment of youth with a parental consent, on referral from a voluntary or public agency, and (2) rehabilitation centers, for court-referred youth, referred as a condition of probation if accepted by the center’s director.
Thus, the Division for Youth began its history as an experiment similar in admission policies to the voluntary agencies which had always been permitted to reject placements. At that time, the New York State Department of Social Welfare (later Social Services) alone had the responsibility of accepting youngsters who were not chosen by a private agency. The 1963 grant of permission to reject must be understood in that context. The Family Court had no power whatsoever to place any child with the Division for Youth when the language in question was enacted.
The system of State schools and centers (formerly called “State training schools”) used over the decades for involuntary placements was not under the State Division for Youth until July 1, 1971. Prior to that, such “title 3” schools were defined in the Social Services Law and operated by the State Department of Social Services (formerly the State Department of Social Welfare).
When the State Division for Youth was directed to accept responsibility for the additional facilities, it became the only public agency with a variety of public facilities which is required to accept Family Court placements.
The differences between the title 2 and title 3 facilities are not clearly defined within the Executive Law. The same facility that is a title 2 center one year may become a title 3 facility the next year without noticeable changes in program. At the time of this hearing, one facility was considered in both titles.
The Division for Youth names the facilities and decides under which title of the law the facility exists at any particular moment. In essence, the question may be *9 whether that clear power to name them as title 2 or 3 facilities can prevent the Family Court from performing its function of directing their use for the benefit of an individual child in need of placement.
Until 1971, the Family Court had no authority to place youngsters with the Division for Youth directly. Any child over whom the court had jurisdiction might be with the division only on the child’s own consent as a result of the division’s permitting a period of placement as a condition of probation.[3]
However, by 1978, many amendments to Family Court placement statutes had taken effect. The court was given the power to place in any “youth center” operated by the State Division for Youth. The law was amended so that section 756 (subd [a], par [iii]) of the Family Court Act states, “Where the child is placed with the division for youth, the court shall *** authorize the division to do one of the following *** (3) place a child * * * in a youth center pursuant to the provisions of section five hundred two of the executive law.”
In interpreting the new powers of the Family Court regarding placement, it should be noted that under statutory construction, principles, the imperative statute takes precedence. The Family “[Cjourt shall *** place”. The Division for Youth under section 502 of the Executive Law “may refuse”. (See Matter of Felix R., 96 Misc 2d 221, 225.)
Section 756 of the Family Court Act also says the court may place the child in the custody of the Division for Youth “subject to the orders of the court.” Furthermore, section 255 of the Family Court Act gives the court authority to require the division’s “assistance and cooperation as shall be within its legal authority” in carrying out dispositions that suit the needs of any individual respondent.
The Family Court has the duty under the law to determine the placement considering “the needs and best interests of the respondent as well as the need for protection of the community.” In directing this, section 711 of the Family Court Act orders the use of the least restrictive confine *10 ment which considers both the respondent’s needs and society’s. (Matter of Andre L., 64 AD2d 479.) “[A]n appropriate order of disposition” (Family Ct Act, § 711) is required.
IV. PLACEMENT FOR THIS RESPONDENT
The respondent has many problems, already discussed above. In theory, a title 2 or title 3 placement might be equally useful. The respondent needs psychological services; no Division for Youth facility will provide individual therapy without an individual court order. One does not readily reverse years of deprivation and pathological experiences. A complete, rehabilitative approach is not available. Available facilities are poorly staffed and seem to have only partially developed programs.
Thus, the court’s choices for this respondent are not great in number or kind. The necessary planning for such children would lead to each institution’s having a known type of help for identifiable types of children. As the testimony clearly proves, such choice is unknown. However, youngsters with the most violent pasts are most likely to be found in great numbers in a title 3 placement.
This respondent needs as much support as he can obtain from adults and youngsters in any placement. In deciding, experience indicates this court must “recognize * * * the impact of the living routine, the peer relationship, the informal contacts *** on those who are institutionalized.”[4]
It is true the respondent has admitted antisocial behavior beyond the finding of the court, but that does not prove attempts to treat or otherwise change in him a structured but somewhat open facility are doomed to failure. To place this respondent in the most restrictive environment available is to agree with those who claim that all rehabilitative endeavors fail. The truth is that few have been offered the kind of help envisioned when we use the word “rehabilitation”, and this respondent has received no such offer.
A title 3 placement would put this child in close, regular contact with youths who have committed crimes of violence, youths usually physically stronger than this small, *11 15 year old, often persuasive youths whose influence will outweigh any services offered within the walls.
This respondent is not yet one of the violent, professional criminals, and the court would do society a disservice by agreeing to place him among a large group in that category whose members will either use him or influence him to become one of them. Constructive influences surely exist in title 3, but they probably will not outweigh the destructive aspects for this child.
After considering all of the testimony and other evidence entered during the hearing, the court places the respondent in a title 2 facility under the New York State Division for Youth despite the rejection when originally approached by the probation officer.
The court finds that title 2 placement with the Division for Youth is in the respondent’s best interest, that it sufficiently protects society while granting him the opportunity to receive the treatment he needs.
The court directs placement not in a specific facility but only in a grouping within which the division may choose the particular facility from the many title 2 facilities available. Placement is for one year, the maximum time permitted under the law.
The Division for Youth is directed to provide individual therapy for the respondent, wherever he may be residing.[5]

. Letter from the Chairman of the Association of the Bar of the City of New York to the Governor’s counsel in commenting on the proposal. (April 28, 1960.)

. Kahn, Planning Community Services for Children in Trouble, p 433.

. The only means then of entering the Division for Youth directly or indirectly under a court order. (Executive Law, § 502, subd 2, par [b], cl [1].)

. Kahn, Studies in Social Policy and Planning, p 98.

. The order was made on the last day of the dispositional hearing, March 24, 1981, with the statement that this opinion would follow.